Warren Glass Works Co. *vs.* Keystone Coal Company.

---

THE WARREN GLASS WORKS COMPANY *vs.* THE KEYSTONE COAL COMPANY OF SOMERSET, PENNSYLVANIA.

*Sale of Goods—Breach of Warranty—Parol evidence to vary Written contract—Caveat Emptor—Implied warranty.*

When goods inferior to the quality specified in the warranty, have been offered for delivery, the vendee may refuse to accept them; or having accepted them, he may withhold payment and compel the vendor to bring his action, and avail himself of his remedy by way of recoupment; or he may himself bring suit for the recovery of damages for the breach of warranty.

When parties have reduced their agreement to writing, anything in relation to the subject-matter that was said anterior to the formation of the written contract, cannot be proved for the purpose of varying its meaning, or adding to the obligations imposed by the terms selected and adopted by the contracting parties.

The rule *caveat emptor* has always received the sanction of the Courts of this State.

A written contract was made between a company engaged in the manufacture of glass and a coal company, for the delivery by the

latter to the former at a designated place,$and at prices specified, of a certain amount of "fine coal," and of the "run of mine," when the fine coal could not be supplied. The coal was to be used in the manufacture of glass. There was no express warranty in the contract with respect to the quality of the coal; and the coal received corresponded with the particular description in the contract. In an action by the glass company to recover damages of the coal company, for injuries alleged to have been sustained by reason of the unfitness of the coal for the manufacture of glass, it was HELD:

That there was no implied warranty that the coal purchased should be suitable for the particular purpose for which it was intended.

·APPEAL from the Circuit Court for Washington County.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., YELLOTT, STONE, MILLER, BRYAN, and RITCHIE, J.

*Ferdinand Williams*, for the appellant.

*A. Hunter Boyd*, and *Henry Kyd Douglas*, for the appellee.

YELLOTT, J., delivered the opinion of the Court.

This is an appeal from a judgment of the Circuit Court for Washington County. The appellant, as plaintiff below, alleged in its declaration that, being engaged in the manufacture of glass, the defendant sold and delivered to it eighteen hundred tons of Keystone coal, knowing that said coal was to be used in its manufacture aforesaid. It is also averred in the declaration that, at the time of the sale and delivery, the defendant warranted the coal to be good and merchantable, and reasonably fit for the purpose to which it was to be applied; but that a large quantity of said coal was unfit for such purpose; that its unfitness was known to the defendant; and that the

quality of the glass manufactured was greatly deteriorated by the inferior quality of the coal thus furnished. The alleged breach of warranty therefore forms the foundation for the action.

When goods inferior to the quality specified in the warranty, have been offered for delivery, the vendee may refuse to accept them; or, having accepted them, he may withhold payment and compel the vendor to bring his action and thus have an opportunity to avail himself of his remedy by way of recoupment; or he may seek redress by the institution of a suit for the recovery of damages resulting from the breach of warranty. The plaintiff in this action claims damages for an alleged breach of warranty, and it is manifest that he cannot recover unless this averment in his declaration is supported by competent proof. The *allegata* must be verified by the *probata*. In actions at law, as well as in suits in equity, the same inflexible rule is applicable; and the material facts, forming the foundation for the remedy invoked, must not only be averred, but must be made apparent by the adduction of satisfactory proof. In the language of Chief Justice MARSHALL this is "a maxim too well established to be disregarded." *Carneal vs. Banks*, 10 *Wheat.*, 189.

The Circuit Court determined that there had been a failure to comply with this fundamental rule, or, in other words, that the evidence in the cause did not support the averment in the declaration, and this is the material question presented by the pending appeal.

The contract between the parties is in writing, and consists of a letter addressed by the defendant to the plaintiff's agent, and the reply of the latter to this communication. The first letter is in these words:

"Referring to our conversation yesterday, I will deliver you 1,800 tons of Keystone coal, at rate of 150 to 175 tons per month, on cars at Keystone Junction, fine coal as heretofore, and such run of mine as will make up the

amount when we are short of the fine, at 60 cents per ton on cars at same place. Please write if this is your understanding of conversation. The whole bid is based on present rates of freight between Keystone and your works."

The agent of the plaintiff, in response to this letter, wrote as follows:

"In reply to your favor of the 14th inst. would say that you can enter our order for 1,800 tons of coal, or as much more as we may require for use at our works here, for delivery during the year 1885, at the following prices, on cars at Keyston Junction, provided, however, that the freight rate from that point to this, is not raised during the year: Fine coal at 45 c. per ton of 2,240 lbs., and run of mine at 60 c. per ton of 2,240 lbs., when it is impossible for you to supply fine coal."

These two letters are the only evidence of the formation of a contract between the parties to the action. At the trial of the cause in the Court below the plaintiff endeavored to supplement this evidence by an offer to introduce testimony tending to prove that on the day before the purchase of the coal mentioned in the contract, the agent of the defendant, from whom it was bought, was informed by plaintiff that bad coal would ruin the glass; and that in the manufacture of this article good coal was necessary. The Court excluded this testimony, and its ruling forms the basis for the plaintiff's first bill of exception. There is no perceptible error in this ruling. The exclusion of this testimony rests on well established principles. When parties have reduced their agreement to writing, anything in relation to the subject-matter, which was said anterior to the formation of the written contract, cannot be proved for the purpose of varying its meaning, or adding to the obligations imposed by the terms selected and adopted by the contracting parties. If the rule were otherwise the most solemn instruments of writing would be liable to al-

teration by oral proof; for some conversation in regard to the subject-matter must necessarily precede the execution of every agreement. As was said in *Pickering vs. Dowson*, 4 *Taunt.*, 784, "It is in vain to reduce a contract to writing if you may afterwards refer to all that has passed by parol." And in *Gardiner vs. Grey*, 4 *Cowp.*, 144, Lord ELLENBOROUGH says emphatically that a written contract cannot "be superadded by parol testimony."

What has been said in relation to the plaintiff's first bill of exception is equally applicable to the second. The plaintiff sought to prove that a conversation between the agents of the parties led to the formation of the contract; that this conversation was on the day before the first of the letters, forming the contract, was written, and related to the quality of the coal, and the promise of the defendant to furnish Keystone coal suitable for the purpose specified. As this conversation preceded the formation of the written contract, it was simply an attempt to supplement an agreement in writing by parol testimony, and the Court committed no error in rejecting evidence offered for such purpose.

The evidence on the part of the plaintiff tended to prove that fine coal was more suitable for the manufacture of glass than was that which is described as "the run of the mine," and that both sorts were furnished by the defendant. The plaintiff also offered proof in relation to the nature and extent of the damage to the glass caused by the use of the inferior coal. The evidence on the part of the defendant tended to prove that the coal delivered to the plaintiff was "Keystone coal, fine and the run of the mine," and was not inferior to other coal of that description..

It will be perceived that by the terms of the contract there is no express warranty with respect to the quality of the coal. In England the older decisions enunciate the general principle that the seller is not liable for de-

fects of any kind in the thing sold, unless there is an ex-- press warranty or fraud on the part of the seller. A sound price is not tantamount to a warranty of the quality of the thing sold. *Harvey vs. Young, Yelv.,* 21; *Parkinson vs. Lee,* 2 *East,* 322. In *Hall vs. Condor,* 2 *C. B. N. S.,* 40, it is said that "the law is quite firmly established that, on the sale of a known ascertained article there is no implied warranty of its quality." It is true that in some cases there may be what is termed *falsa demonstratio,* as in the sale of goods by samples; and it has been held that under a contract to supply goods of a specified description which the buyer has had no opportunity of inspecting, the goods must not only, in fact, correspond to the specific description, but must be saleable or merchantable under that description. But no such case is presented by this record. The contract was for Keystone coal, fine coal and the run of the mine, and the plaintiff's evidence shows that it received coal corresponding to this particular description. The contract specifies Keystone coal, "fine and the run of the mine," and there is nothing else in its terms to indicate the quality contracted for. When delivered at the place designated, the plaintiff certainly had ample opportunity to ascertain the quality by an inspection. There is therefore no foundation for an implied warranty, and the authority of *Jones vs. Just,* 2 *. Queen's B. L. R.,* 197, is inapplicable to the case presented by this record.

It is true, that at least in two of the States the doctrine of the civil law, that a sale for a sound price implies a warranty of the thing sold, was at one time recognized and adopted. *Bailey vs. Nickols,* 2 *Root,* 407; *Whitefield vs. M'Leod,* 2 *Bay,* 380.

· But in most of the States this doctrine has been repudiated. In *Seixas vs. Woods,* 2 *Caines,* 48, KENT, J., adopting the language of Sir EDWARD COKE, says that "by the civil law, every man is bound to warrant the

thing he selleth albeit there be no express warranty; but the common law bindeth him not, unless there be a warranty in deed or law." And in a later case the same Court decided that "there is no implied warranty, in a general sale, that the quality shall be equal to the price." *Hart vs. Wright*, 17 *Wend.*, 269.

In *Mixer vs. Coburn*, 11 *Metc.*, 561, Chief Justice SHAW says:

"The defendant contends that there was an implied warranty on the sale, that the goods were merchantable and sound. But we think this position cannot be maintained. The rule of the common law is well established, that upon a sale of goods, if there is no express warranty of the quality of the goods sold, and no actual fraud, the maxim *caveat emptor* applies and the goods are at the risk of the buyer."

The citation of authorities supplied by the decisions in other States would seem to be unnecessary, as in, *Barnard vs. Kellogy*, 10 *Wall.*, 383, the Supreme Court of the United States says: "Of such universal acceptance is the doctrine of *caveat emptor* in this country, that the Courts of all the States in the Union where the common law prevails, with one exception, sanction it."

The rule *caveat emptor* has always received the sanction of the Courts in this State. *Hyatt vs. Boyle*, 5 *G. & J.*, 120; *Gunther & Rodewald vs. Atwell*, 19 *Md.*, 171; *Rice vs. Forsyth*, 41 *Md.*, 404.

And in one of the latest cases in which this question was presented, the Court said:

"The law is well settled that when a known, described and defined article is ordered, even of a manufacturer, although it is stated to be required by the purchaser for a particular purpose, and if the known, described and defined thing be actually supplied, there is no implied warranty that it shall answer the particular purpose intended by the buyer; in such case the purchaser takes upon him-

self the risk of its effecting its purpose." *Rasin & Co. vs. Conley*, 58 *Md.*, 65.

In the case now under consideration the contract was for the sale and delivery of Keystone coal, either fine or the run of the mine, and it was not even specified in this contract that the coal was to be fit for any particular purpose. The evidence of the plaintiff shows that the coal received from the defendant was the kind of coal described in the contract. In the declaration it was averred that there was a warranty of the quality, and it is contended that from the nature of the transaction the warranty must be implied. The Court in its instruction told the jury that there was no evidence legally sufficient to establish a warranty, and that the defendant was not responsible for the damages claimed by the plaintiff. The granting of the sixth prayer of the defendant, containing these instructions, necessarily involved the rejection of the plaintiff's prayers, and by taking the case from the jury determined the controversy in the Circuit Court. There was no error in the ruling of the Court below and its judgment should be affirmed.

*Judgment affirmed.*

(Decided 24th June, 1886.)