UNION NATIONAL BANK OF CHICAGO, Respondent, *v.* ELIZABETH J. CHAPMAN, Appellant, Impleaded with Others.

1. CONTRACTS— THE LAW OF PLACE. All matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made.

2. SAME. All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract by its terms is to be performed.

3. SAME. All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend upon the law of the place where the action is brought.

4. WHEN LIABILITY OF WIFE SIGNING PROMISSORY NOTE AS SURETY FOR HER HUSBAND IS DETERMINED BY THE LAW OF THE STATE WHERE THE CONTRACT IS MADE. An accommodation note, payable in the state of Illinois, but executed and delivered in the state of Alabama by a firm and two of the partners individually, and signed by their respective wives as sureties for the firm, with no other knowledge as to where it would be negotiated except as indicated by the note itself, is, with respect to the contract of suretyship, a contract made in the state of Alabama and is void under the laws of that state prohibiting a wife from directly or indirectly becoming a surety for her husband.

*Union Nat. Bank* v. *Chapman,* 52 App. Div. 57, reversed.

(Argued January 13, 1902; decided January 31, 1902.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 5, 1900, affirming a judgment in favor of plaintiff entered upon a decision of the court at a Trial Term without a jury.

The nature of the action and the facts, so far as material, are stated in the opinion.

*David B. Hill* and *O. P. Hurd* for appellant. The capacity of Mrs. Chapman to make the note in question and to become a surety for her husband was governed by the law of Alabama. (Story on Conf. of Laws, 19, § 18; *Lemon* v. *People*, 20 N. Y. 562; 2 Pars. on Cont. [8th ed.] 569; 3 Am. & Eng. Ency. of Law [1st ed.], 502, 518; 2 Kent's Comm. 458; *Hill* v. *Pine River Bank*, 45 N. H. 300.) The validity of the note is governed by the law of Alabama. (7 Am. & Eng. Ency. of Law [2d ed.], 100; *Bell* v. *Leggett*, 7 N. Y. 179; *Barton* v. *P. J. & N. F. P. R. Co.*, 17 Barb. 397; *Continental Bank* v. *Clarke*, 17 Ala. 292; *Hawkins* v. *Ross*, 100 Ala. 484; *Heard* v. *Hicks*, 82 Ala. 484; *Lansden* v. *Boon*, 90 Ala. 447; *Schining* v. *Coffer*, 12 South. Rep. 414; *McNeil* v. *Doris*, 17 South. Rep. 101; *Hyde* v. *Goodnow*, 3 N. Y. 266; 2 Pars. on Cont. [8th ed.] 576; Story on Prom. Notes, § 156; *Scudder* v. *U. Nat. Bank*, 1 Otto, 406.) Notes declared void by statute, or which are so by necessary implication, are void even in the hands of a *bona fide* holder. (Edwards on Bills, 333–337; *Rockwell* v. *Charles*, 2 Hill, 494; *Vallet* v. *Parker*, 6 Wend. 615; *Grimes* v. *Hillenbrand*, 4 Hun, 354; 1 Daniel on Neg. Inst. §§ 197, 807; 3 Kent's Comm. 80; *Vories* v. *Nussbaum*, 131 Ind. 267; *Johnson* v. *Sutherland*, 39 Mich. 579; *Waterbury* v. *Andrews*, 67 Mich. 281.) As between Mrs. Chapman and her husband and her husband's partners, the note in question had an inception in the State of Alabama, if it can be said that it ever had any inception at all as to her. (*Kronitzky* v. *Meyer*, 49 N. Y. 571; *Freeman's Appeal*, 68 Conn. 533; *Hoger* v. *Nat. G. A. Bank*, 31 S. E. Rep. 141; *Barry* v. *E. L. Assur. Society*, 59 N. Y. 587;

*F. Nat. Bank* v. *Mitchell*, 92 Fed. Rep. 565; *Milliken* v. *Pratt*, 125 Mass. 374; *Bell* v. *Packard*, 69 Me. 105; *Johnson* v. *Gowtry*, 83 Mo. 339; *U. S.* v. *Roach*, 2 Otto, 27; *Carter* v. *Beckwith*, 128 N. Y. 312.) A purchaser of negotiable paper takes it with constructive notice of all legal disabilities of the parties, such as infancy, coverture or unsoundness of mind. (*McClain* v. *Davis*, 77 Ind. 419; *Vories* v. *Nussbaum*, 131 Ind. 267.) The fact that the note was negotiated by the payee in Illinois has no bearing on the question of the capacity of Mrs. Chapman to become surety for her husband in Alabama. (*Jewell* v. *Wright*, 30 N. Y. 259; *Dickinson* v. *Edwards*, 77 N. Y. 573; *W. C. S. Bank* v. *Low*, 81 N. Y. 566; *Staples* v. *Nott*, 128 N. Y. 403.) The law of the place of payment of a promissory note does not determine its validity. (*Scudder* v. *U. Nat. Bank*, 91 U. S. 406; *Buhe* v. *Buck*, 45 Am. St. Rep. 439; *Robinson* v. *Queen*, 10 Am. St. Rep. 690; *Campbell* v. *Crampton*, 2 Fed. Rep. 417; *F. B. H. C. Co.* v. *Sharpe*, 83 Mo. App. 385; Story on Conf. of Laws, §§ 103, 241; 2 Kent's Comm. 233, notes 458, 459; Whart. Conf. of Laws, § 96; *Joslin* v. *Miller*, 14 Neb. 91; *Lowry* v. *Western Bank*, 7 Ala. 120; *Powers* v. *Lynch*, 3 Mass. 77; *Evans* v. *Kittrell*, 33 Ala. 449; *A. Ins. Co.* v. *Morten*, 3 La. Ann. 417.)

*John A. Barhite* for respondent. The note had no inception until it was delivered to the bank for value in Chicago. It was an Illinois contract and the liability of Mrs. Chapman is governed by the laws of that state. (*Stearns* v. *S. L. & S. F. R. R. Co.*, 4 N. Y. S. R. 715; *Pickering* v. *Corching*, 92 Ind. 306; *Du Bois* v. *Mason*, 127 Mass. 137; *Voigt* v. *Brown*, 42 Hun, 394; *F. Nat. Bank* v. *Mitchell*, 92 Fed. Rep. 565; *Milliken* v. *Pratt*, 125 Mass. 374; *Bell* v. *Packard*, 69 Me. 105; *Johnson* v. *Gowtry*, 83 Mo. 339; *Lee* v. *Selleck*, 33 N. Y. 615; *Dickinson* v. *Edwards*, 77 N. Y. 573.) The laws of New York would make Mrs. Chapman liable upon the note, and the courts have the right to construe the contract

with reference to these laws if such contention will protect the rights of one of our citizens. (*H. Nat. Bank* v. *Lacombe*, 84 N. Y. 367; Story on Prom. Notes, § 156; *Hoyt* v. *Thompson*, 19 N. Y. 707; *Matter of Waite*, 99 N. Y. 433; *Edgerly* v. *Bush*, 81 N. Y. 199; *Smith* v. *Godfrey*, 28 N. H. 379; *Marshall* v. *Sherman*, 148 N. Y. 9; *Curtis* v. *Leavitt*, 15 N. Y. 9.)

HAIGHT, J.  This action was brought upon a promissory note made at Tuscumbia, in the state of Alabama, by the defendants, Chapman, Reynolds & Co., a copartnership engaged in business at that place, in the building of a lock in the Tennessee river for the government of the United States, of which note the following is a copy:

" $5,000.                    TUSCUMBIA, ALABAMA, *May 1st*, 1894.

" Six months after date we promise to pay to the order of E. P. Reynolds, Jr., five thousand and no 100ths dollars, value received, with interest at eight per cent. per annum from date, payable at Union National Bank, Chicago, Illinois.

                    " CHAPMAN, REYNOLDS & CO.,
                    " W. P. CHAPMAN,
                    " ELIZABETH J. CHAPMAN,
                    " ELLA  HOWARD,
                    " C. W. HOWARD."

The trial court has found as facts that the defendant Elizabeth J. Chapman was the wife of William P. Chapman, who was a member of the firm; that she signed the note at the request of her husband as surety for the firm, and that while it was the intention of the firm that the note should be negotiated and discounted in the state of Illinois she did not know of such intention except from what appeared on the face of the note; that she signed the note for the purpose of raising money for the firm to enable it to continue its work upon the government contract in Alabama, and after the note was executed it was delivered to Reynolds, the payee therein named, who took it to the plaintiff's bank in Chicago, Ill.,

indorsed it and delivered it to the bank for the purpose of securing loans already made to the firm, and for the purpose of procuring additional loans.

The defense interposed by the defendant Elizabeth J. Chapman was that she had no capacity to make the contract in question under section 2349 of the Code of the state of Alabama, which provides that "the wife shall not, directly or indirectly, become surety for her husband," and it was, therefore, invalid and of no binding force against her.

On behalf of the plaintiff it is contended that the note had no legal inception until it was discounted by the plaintiff's bank in Illinois, and that it then became a valid contract of that state and under its laws the wife was not disqualified from becoming surety for her husband. The question thus presented is as to whether this was an Alabama or an Illinois contract.

As we have seen, the note was drawn, signed and delivered to the payee at Tuscumbia, Ala., and that Mrs. Chapman signed as surety for her husband. She did not authorize it to be discounted in Illinois, or know that the members of the firm intended to have it negotiated there. She only knew that it was payable at the plaintiff's bank in that state. It is true the note did not have a valid inception in such a sense as to create a liability on the part of the makers until it was discounted and passed over to the bank, but this does not necessarily make it an Illinois contract, so far as the surety is concerned. Mrs. Chapman's contract to become surety was complete when the instrument was signed and delivered to the payee. It was then a contract beyond her recall, upon which she in the future might become liable when negotiated by the payee, if otherwise valid, and the place of the negotiation could not, under the circumstances, in any manner change the force or effect of her contract. One of the essential elements in a contract is the meeting of the minds of the contracting parties upon the matter which is the subject of the contract. In this contract Mrs. Chapman agreed with the payee of the note that she would become surety for her husband to the

amount thereof, and this agreement was made in the state of Alabama. She did not agree that it should be negotiated in Illinois and made an Illinois contract. Her mind did not meet the intention of the payee upon that subject, and she cannot, therefore, be held to have agreed that it should become a contract of that state. She knew, by the terms of the instrument, that it was payable at the plaintiff's bank, but this did not advise her that it was intended to discount it there or to constitute it a contract of that state. It appears from the evidence that the firm kept its accounts with and made its deposits in the plaintiff's bank, and she might well have assumed that it was made payable there for the convenience of the firm.

We have had occasion to examine many cases bearing upon the question under consideration. It may not be profitable to here indulge in an extended discussion of the authorities, for we have found none that are exactly in point. We shall, therefore, extract from them some general principles, which appear to be settled beyond controversy, and apply them to the question under consideration.

1. All matters bearing upon the execution, the interpretation and the validity of contracts, including the capacity of the parties to contract, are determined by the law of the place where the contract is made.

2. All matters connected with its performance, including presentation, notice, demand, etc., are regulated by the law of the place where the contract, by its terms, is to be performed.

3. All matters respecting the remedy to be pursued, including the bringing of suits and the service of process, depend upon the law of the place where the action is brought.

In the case of *Scudder* v. *Union Nat. Bank* (91 U. S. 406) a bill of exchange was drawn by a party in Chicago upon a firm in St. Louis, and verbally accepted by a member of the St. Louis firm, then present in Chicago. Under the law of Missouri acceptances were required to be in writing, but under the law of Illinois a parol acceptance was valid. The bill of exchange, as we have seen, was drawn in Chicago, Illinois,

and, therefore, all matters pertaining to its execution, interpretation and validity had to be determined by the laws of that state. It was made payable in St. Louis, Mo., and, ordinarily, the laws of that state would control with reference to acceptance and performance, but a member of the firm in that state was present in Chicago and he there accepted the bill of exchange without waiting for it to be sent on to St. Louis to his firm in that city. It was, therefore, held to be an Illinois acceptance.

In the case of *Voigt* v. *Brown* (42 Hun, 394) the husband and wife resided in the state of New York; the wife here authorized her husband to sign her name to an accommodation note. He then went into Connecticut and there executed a note payable to the order of the firm of which he was a partner and signed her name thereto. He then took the note to New York and had it discounted by the plaintiffs and received the money. Under the laws of Connecticut a married woman could not contract except for the benefit of herself, her family or her separate or joint estate. Under the laws of New York her contract was valid. It was held to be a New York contract. The learned Appellate Division cites this case as supporting their contention, but to our minds it widely differs from that which we have under consideration. In that case the wife, as we have seen, resided in this state and remained in this state. The authority of her husband to sign her name to the note was given here. When he, therefore, as her agent, drew the note and signed her name thereto, he acted upon authority derived in this state, and the paper became of the same force and effect as if the wife had actually signed it here. It was taken to the city of New York and there negotiated. We thus have it drawn as a New York contract and negotiated as a New York contract, and it evidently was so understood by the parties.

In the case of *Milliken* v. *Pratt* (125 Mass. 374) a wife guaranteed the payment by her husband of five hundred dollars to one Pratt of Portland, Me. The guaranty was in writing and was dated at Portland, January 29, 1870. She,

however, actually signed the paper in Massachusetts, but she sent it to Pratt at Portland and caused it to be delivered to him there. Acting upon it he delivered goods to her husband which he then purchased. The guaranty was valid under the laws of Maine but void under the laws of Massachusetts. It was held that the contract was governed by the laws of Maine. In this case it will be observed that the guaranty not only purports to have been executed in Maine but that the wife caused the instrument to be sent to Maine and there delivered to the plaintiff. She, therefore, knew and understood that the contract was to have its inception there, and, consequently, must have intended it to be controlled by the laws of that state.

In line with this is the recent case of *Grand* v. *Livingston* (4 App. Div. 589, affirmed in this court, 158 N. Y. 688), in which it was expressly held that the contract must be construed and determined under the law of the state where it was executed *unless it could fairly be said that the parties at the time of its execution clearly manifested an intention that it should be governed by the laws of another state.*

Applying these principles to the question under consideration, it seems clear that the capacity of Mrs. Chapman to contract must be determined by the law of the state where the contract was executed unless it can fairly be said that she, at the time of the execution of the instrument, clearly understood and intended that it should be governed by the laws of another state. Such an intention or understanding is not manifest in this case; instead thereof, it is found that she did not know where the paper was to be discounted.

The judgment should be reversed and a new trial granted, with costs to abide the event.

Vann, J. (dissenting). While Mrs. Chapman signed her name in Alabama, she promised to pay in Illinois. If there is doubt as to the state where the contract was made, there is none as to the state where it was to be performed. Although in fact a surety for her husband's firm, there is nothing on

35

the face of the note to show it, for she contracted as a maker and her promise is absolute in form. Uniting with that firm and others as joint makers, she promised to pay the sum in question to the order of E. P. Reynolds, Jr., at the "Union National Bank, Chicago, Ill." The payee was a member of her husband's firm and she knew it when she signed the note. She also knew that it was an accommodation note, made to raise money for the use of the firm and that until negotiated it was without binding force upon any one. After signing it she intrusted it to the payee, knowing that, in behalf of the firm, he intended to negotiate it somewhere and that he was at liberty to negotiate it anywhere. When the payee thus received the note signed by her she had made no contract, for the paper had no inception as yet. The contract of a surety rests upon the contract of the principal, and until the latter becomes operative the former is not binding. The promise of the surety has nothing to act upon until the promise of the principal is in force as an effective contract. When the firm negotiated the paper in Illinois, as they had a right to, by selling it to a *bona fide* purchaser for value, that which theretofore had been merely a note in form first became a note in fact. It then became a contract and for the first time acquired the quality of commercial paper. Until then the law did not recognize Mrs. Chapman as a surety. She had made no enforceable contract, but merely an inchoate promise, which was without legal life, until what was done in Alabama with implied authority to complete it elsewhere, ripened into a lawful obligation by what was done in Illinois. All that was done in Alabama did not make a contract, and, therefore, the contract was not made in that state. It was made in Illinois, because there was no contract, either of principal or surety, until the paper was used in that state. That use of the note was necessarily within the contemplation of Mrs. Chapman when she signed it and gave it to Mr. Reynolds, the payee, with her implied consent that he, or his firm, might negotiate it anywhere, and hence within a state where the law permits a wife to become surety for

her husband. As the law presumes a lawful and not an unlawful intent, when possible, the presumption arises, in the absence of evidence upon the subject, that she intended the note should be used in a state where she could become such a surety. Hence she is presumed to have contracted, not with reference to the laws of Alabama, where her action would not be binding, but with reference to the laws of any jurisdiction where her promise would be lawful, provided the paper should subsequently be used within such a jurisdiction. Otherwise she must have intended to aid in imposing upon some one, which will not be presumed, but must be proved. As the note was made payable in Illinois, was delivered by Mrs. Chapman with leave to negotiate it anywhere and it was actually negotiated and had its first inception in that state, the mere fact that it was written in another state where she had a temporary residence only and where she knew it could not be enforced and hence could not be honestly used, did not make it a contract of that state nor prevent it from becoming a contract of the state within which she promised to pay it. I think it was an Illinois contract and should be governed by the laws of that state. For these reasons I dissent from the conclusion reached by the majority of the court and record my vote in favor of affirming the judgment appealed from.

PARKER, Ch. J., GRAY, O'BRIEN and MARTIN, JJ., concur with HAIGHT, J.; BARTLETT, J., concurs with VANN, J.

Judgment reversed, etc.