SARAH LEDERKREMER, Plaintiff, *v.* HIRSZ GELBERG VEL LEDER-KREMER, Defendant.

Supreme Court, Kings County, January 18, 1940.

*I. Gainsburg,* for the plaintiff.

*Harold Green,* for the defendant.

CUFF, J.   This action for an annulment was tried in Kings county. At the conclusion of the trial I dictated findings leaving open one question, to wit, the law of Poland with respect to grounds for annulling a marriage.   That question has been briefed and an additional hearing had on that point.   The court appreciates the untiring efforts of counsel.

Those findings were: Defendant's representations that he loved plaintiff and that he wanted her for his wife when he proposed marriage to her in April, 1936, at Zamosc, Poland, were false; that at the time he knew that his representations were false; that he

intended by his deceit to obtain plaintiff's consent to marry him; that plaintiff believing that the representations were sincerely made, gave her consent and married him; that defendant's scheme was to acquire the status of husband of an American citizen for the sole purpose of assuring and expediting his entry into the United States as an alien; that he had no intention of living with and supporting plaintiff as his wife.

Defendant, at the trial, denied the fraud. He also set up as a defense that fraud is not a ground for annulment in Poland, the law of which country he said should be applied to this contract because the marriage took place there.

The facts are: On March 12, 1936, plaintiff, a resident and citizen of New York, departed from this country on a vacation trip of a few months. Her destination was Zamosc, Poland, the place of her nativity. She arrived there on March 21, 1936. Four days later, through her cousin, she met defendant — a Polish citizen. He was a painter. Daily they saw one another. He constantly discussed the United States, conditions there, how she became a citizen and said that he envied her because of her citizenship. She was attracted to him. There were visits to his relatives. He lived around the corner from her relatives. They knew him well. The courtship soon took on serious aspects.

On April 25, 1936, he asked her to marry him. Plaintiff noted that she had seen no evidence of his earning capacity. He responded that when they were married he planned that she would take him to the United States and that there he would become a successful artist. Promises that there would be a home, some children and great happiness were made by him. She entertained visions of a wholesome union with this man of her choice. Her consent followed these representations. The marriage ceremony was performed by a rabbi in Poland on April 29, 1936.

Plaintiff left Poland for the United States on May 18, 1936. Her instructions from defendant were to apply for his preferential visa, obtain his steamship ticket and " rush this thing through fast." She thought he meant the establishing of their home. He had other ideas. She arrived at New York on May 27, 1936, and set in motion the machinery " to send for my husband."

Plaintiff paid all the expenses incidental to the marriage; provided defendant with clothing and spending money while the couple were in Poland before and after marriage. Upon her return to this country she continued to supply him, at his request, with funds. He stopped working when plaintiff left Poland on May 18, 1936, earning nothing thereafter, according to his letters to her.

A cablegram dated December 3, 1937, addressed to plaintiff, stated that he had received his visa and that it was necessary for him to have fifty dollars. Plaintiff sent him sixty-five dollars. She paid for and forwarded to him his steamship ticket. He arrived in New York on February 14, 1938. She met him at the boat, took him to a tailor, fitted him out at her expense with full attire; visited her relatives with him and then brought him to the abode that she had chosen as a home for them, ready for occupancy, at No. 247 Brooklyn avenue, Brooklyn, N. Y.

In about one week evidence of his lack of interest in plaintiff began to manifest itself. His hours became most irregular. He came home late in the night. When plaintiff complained about this inattention, he told her not to consider herself married. This statement was made early in March, 1938 — about three weeks after he arrived in this country. All of this time she was supplying him with a home, board and ten dollars each week. Plaintiff resumed working as an operator on dresses when she returned to New York in May, 1936.

About a month after defendant's arrival, he told her that he was not married to her as far as he was concerned; that he did not love her; that he would not remain with her; that the quicker she left him the better it would be for her; that he was an artist and had to be alone.

They lived together as man and wife only the first two weeks after his arrival. Plaintiff, who said her life for ten weeks had been torture, concluded that her begging, urging, pleading, to live up to the marriage vows was falling upon unsympathetic ears, and on May 1, 1938, she left him. The apartment was that day given up. The next day — May 2, 1938 — defendant stated to plaintiff's brothers that plaintiff would be better off without him; that he had married her merely for the purpose of gaining admission into the United States; that it was the only course open to him if he wanted to come here; a minor assault by one brother was a result of that deliverance.

Immediately thereafter this action was commenced. Both parties were then residents of New York State.

The rule of *lex loci contractus* obtains to determine the validity of an agreement and the legal capacity of the parties. (*Union National Bank of Chicago* v. *Chapman,* 169 N. Y. 538.) In plaintiff's complaint she alleges that the marriage was performed in Poland and that her consent to enter into the marriage was procured by fraudulent misrepresentations. The burden rests upon her to prove " the facts upon which the allegation of nullity is founded." (Civ. Prac. Act, § 1143.) Unless she excuses herself from doing

so, plaintiff must prove the Polish law and that it sustains the action which she has brought. I think that plaintiff should have the relief she demands for the following three reasons:

(1) On the evidence adduced before me I am satisfied that under the Polish law a marriage, consent to which was procured by fraudulent misrepresentations, would be annulled. (See Civil Code of Poland, part 1, § 9, entitled Essential Requirements for conclusion of marriage; also Case No. 160 T. I. Decisions of the Polish Highest Court.)

(2) It was defendant's avowed intention to come to the United States. The marriage was his vehicle; plaintiff his unwitting tool. Bad faith and cruel deception were in his heart. On the other hand, love prompted her every act. By becoming the spouse of an American citizen he exempted himself from that waiting list of quota entries, which this country has established by law for those who would immigrate from Poland; accelerated his departure, perfected his arrival and assured his remaining here. ("Immigration Act of 1924;" U. S. Code, tit. 8, §§ 201–246; 43 U. S. Stat. at Large, 153.) The defense that he so vigorously interposes is a desperate effort to retain the civil advantages that accrue in his favor by reason of his married status. His vile scheme includes forcing upon this court the Polish law and his version of it. If successful in that thrust, the escape from Poland will have been accomplished and the sacred institution of marriage reduced to a farce. The rule of *lex loci contractus* has its exceptions. (See *Mitchell* v. *Mitchell*, 63 Misc. 580; *Bays* v. *Bays*, 105 id. 492.) The law of New York under the facts presented here demands an annulment. (*Shonfeld* v. *Shonfeld*, 260 N. Y. 477.) A court of equity should not be converted into an instrument of evil and be made to serve the nefarious ends of a scoundrel by permitting the latter to invoke foreign law, the application of which, contrary to our own law, will deprive a wholly innocent party of just relief and at the same time assist the unclean hands of the other party to circumvent and defeat a law of the United States and to complete an unconscionable wrong against plaintiff.

(3) The institution of marriage in this State is based upon mutual consent and reciprocal love and affection. There was no legal consent by plaintiff; no love or affection in fact by defendant. Under the circumstances, New York law and not Polish law should be applied because the latter (according to defendant) would give validity to a marriage of two New York residents to which one party has not consented, thereby contravening violently the public policy of this State. (See *Holzer* v. *Deutsche Reichsbahn Gesellschaft*, 159 Misc. 830.)

Judgment for plaintiff.