VINCEL L. DUVAL, Plaintiff, *v.* SPYROS P. SKOURAS et al., Defendants.

Supreme Court, Special Term, New York County, August 4, 1943.

*Davidson & Mann* for plaintiff.

*Schwartz & Frohlich* for defendants.

BENVENGA, J. This is a motion for summary judgment.

In June, 1943, plaintiff, a nonresident, brought an action upon three bonds, each in the sum of $1,000, guaranteed under seal by Spyros P. Skouras and others. Defendant Skouras has interposed an answer in which he pleads the Statute of Limitations. The question presented is whether the action is barred by the Statute of Limitations. The salient facts are not disputed.

In April, 1925, Central Properties Corporation, in St. Louis, Missouri, executed bonds bearing interest at the rate of 6% per annum, maturing serially commencing April, 1928, and ending October, 1941; with interest on the principal sum after maturity thereof at the rate of 7% per annum; payable semi-annually " in the manner more specifically described in the indenture " hereinafter referred to, " at the office of S. W. Strauss & Co., a corporation, at the city of Chicago, Illinois, or at the office of S. W. Strauss & Co., Inc., New York City ".

To secure payment of the indebtedness, Central executed and delivered the indenture above mentioned, conveying to trustees certain theatre properties located in Missouri. Simultaneously, defendants guaranteed the payment of principal and interest on the bonds " as and when the same shall in any manner be or become due, either according to its terms or earlier maturity thereof, pursuant to the provisions of this bond or the indenture securing the same."

Under the indenture, Central was required to deposit, at fixed periods, with Strauss at its office in Chicago, or with such other depositary as · the trustees might appoint, sufficient

moneys to make payments of principal and interest on the bonds. Upon the making of such deposits, the liability of Central was " discharged " and the bondholders were required " to look for payment * * * solely to S. W. Strauss & Co."

Deposits were made in accordance with the terms of the indenture, and payments on account of principal and interest were made up to April, 1932. Thereafter, Central became and continued to be in default. As a result in October, 1932, the trustees, in accordance with the terms and conditions of the bonds and indenture, elected to declare and did declare the then outstanding bonds to be due and payable immediately, and instituted action to foreclose the lien of the indenture.

It is well settled that, in the absence of a clear intention to the contrary, matters bearing upon the execution, the interpretation, and the validity of a contract are determined by the law of the place where the contract is made; matters connected with its performance, such as the payment of bills, notes and other instruments for the payment of money, are regulated by the law of the place of performance; and matters respecting the remedy and procedure, such as the Statute of Limitations, the bringing of the action, and the admissibility of evidence, are governed by the law of the place where the action is brought. (*Scudder* v. *Union Nat. Bank,* 91 U. S. 406, 412, 413; *Union National Bank* v. *Chapman,* 169 N. Y. 538, 543; *Miller* v. *Brenham,* 66 N. Y. 83, 87; *Stumpf* v. *Hallahan,* 101 App. Div. 383, 386, affd. 185 N. Y. 550; *Hixson* v. *Rodbourn,* 67 App. Div. 424, 428.) These general rules, however, yield to the primary canon of construction, which requires that, where it can be ascertained, the intention of the parties shall govern. (*Stumpf* v. *Hallahan, supra*; *Smith* v. *Compania Litografica,* 127 Misc. 508, 511, 512; affd. 220 App. Div. 782.) " The intention of the parties, express or implied, generally determines the law that governs " (*Compania de Inversiones Internacionales* v. *Industrial Mortgage Bank of Finland,* 269 N. Y. 22, 26).

Therefore, in the absence of statute to the contrary, if an action is barred by the Statute of Limitations of the forum, no action can be maintained, even though the action is not barred in the State where the cause of action arose. Conversely, if an action is not barred by the Statute of Limitations of the forum, an action can be maintained, though the action is barred in the State where the cause of action arose (Restatement, Conflict of Laws, §§ 603, 604; N. Y. Annotations to Conflict of Laws, §§ 603, 604).

This common-law rule has been modified by section 13 of the Civil Practice Act, which provides that "where a cause of action arises outside of this state, an action cannot be brought in a court of this state to enforce such action after the expiration of the time limited by the laws either of this state or of the state or country where the cause of action arises, for bringing an action upon such cause of action, except that where the cause of action originally accrued in favor of a resident of this state, the time limited by the laws of this state shall apply." (See *Walz* v. *Mansfield*, 144 Misc. 304, 306.) Moreover, under section 11 of the Civil Practice Act, the Statute of Limitations begins to run and the period of limitation must be computed " from the time of the *accruing* of the right to relief by action " to the time when the claim to that relief is actually interposed. (Italics supplied).

Here, plaintiff is a nonresident, and the exception in section 13 of the Civil Practice Act is inapplicable. The action is based upon a contract of guarantee, and, therefore, the right to relief by action accrued when Central defaulted in the payment of interest on the bonds, and thereby failed in law to perform the terms and conditions of the bonds and indenture. This, as already stated, was in October, 1932. It was then that the cause of action arose on the contract of guarantee, and it was then that the Statute of Limitations began to run *on the installment of interest then due.* (*McMullen* v. *Rafferty*, 89 N. Y. 456, 459; *Shayne* v. *Reynolds*, 225 App. Div. 70, 72; 37 C. J., Limitations of Actions, §§ 190, 207, 208.)

The question is thus presented as to when the statute began to run *on the principal and interest on the then outstanding bonds.* Defendants, as we have seen, guaranteed the payment of principal and interest on the bonds " as and when the same shall in any manner be or become due, either according to its terms or earlier maturity thereof, pursuant to the provisions of this bond or the indenture securing the same."

Each bond provides that, in case of default in the payment of principal or interest, " the principal of this bond may become due and payable before its regular maturity, as provided in said indenture "; that, moreover, the indenture and the bonds " are to be taken and considered together as parts of one and the same contract."

The indenture provides that, in case of default in the payment of any installment of principal or interest, " the trustees, in their discretion and without any action on the part of any bondholder, may * * * declare the principal of all bonds hereby secured and then outstanding to be due and payable

immediately, and upon such declaration the said principal, together with the interest accrued thereon, shall become and be due and payable immediately, at the place of payment aforesaid, anything in this indenture or in said bonds to the contrary notwithstanding.''

Unquestionably, provisions for the acceleration of maturity, such as that hereinabove referred to, are solely for the benefit of trustees, mortgagees or creditors. They may enforce the provisions or not, as they may see fit. If they choose to exercise the option of accelerating maturity, the entire debt becomes due and payable immediately and the Statute of Limitations begins to run at once. If they see fit to waive the option, the principal debt does not become due and payable until the date of its maturity and the Statute of Limitations does not begin to run until that date. (*Moline Plow Co.* v. *Webb,* 141 U. S. 616, 626; *Quackenbush* v. *Mapes,* 123 App. Div. 242, 245; *Mazur* v. *Stein,* 314 Ill. App. 529, 534–536; *Brinsmade* v. *Johnson,* 192 Mo. App. 684, 692–695; *Perkins* v. *Swain,* 35 Idaho 485; 37 C. J., Limitations of Actions, § 211.)

Here, the acceleration clause authorized the trustees, '' in their discretion *and without any action on the part of any bondholder* '', to declare the principal debt immediately due and payable; then, upon such declaration, the principal, together with the accrued interest, '' *shall* become and be due and payable immediately, at the place of payment aforesaid ''. (Italics supplied.)

It would seem, therefore, that while under the acceleration clause the trustees, and not the bondholders, are given the option of accelerating the maturity of the bonds, nevertheless the option, when exercised by the trustees, became binding and conclusive on the bondholders; for, under the terms of the agreement between the parties, including the bondholders, the provisions of the indenture and bonds are to be taken and considered '' as parts of one and the same contract.'' The effect thereof was to read the acceleration clause into each and every bond. Thereby the plaintiff, together with all the other bondholders, agreed to be bound by the terms and conditions of the indenture and, in particular, by the acts and conduct of the trustees in accelerating maturity. Therefore, when the trustees elected to exercise the option in October, 1932, the entire indebtedness became due and payable immediately and the Statute of Limitations started to run at once.

The question still remains as to where the cause of action arose. Plaintiff contends that, as the bonds provide for payment either in Illinois or New York, the cause of action arose

in either or both places; and, since plaintiff has elected to bring suit in this State, the New York Statute of Limitations is applicable. If that be so, then, under the 1941 amendment to section 47 of the Civil Practice Act, the action would not be barred until after September 1, 1947 (see Civ. Prac. Act, § 47, subd. 2█). On the other hand, if, as defendant insists, the intention of the parties was to make Illinois the place of performance, and that the provision for payment in either Illinois or New York was for the convenience of the Strauss organization, then the action is barred by the Illinois Statute of Limitations, which prescribes a ten-year period (see Jones Ill. Stat. Ann. §§ 107.272, 107.276; *Mazur* v. *Stein,* 314 Ill. App. 529, 534–536, *supra*).

Since the place of performance of a contract depends on the intention of the parties, it may well have been the intention of the parties to make Illinois, and not New York, the place of performance (*Shillito* v. *Reineking,* 30 Hun 345), especially since deposits on account of principal and interest were to be made in Chicago, and more especially since the rate of interest at 7 % in the event of default would be legal in Illinois and illegal in New York. (See *Beadall* v. *Moore,* 199 App. Div. 531, 534.) Under these circumstances, it may well be argued that the bonds were made payable in New York as well as Chicago, to suit the convenience of Strauss & Co., or even for the convenience of the bondholders. At all events, the question of the intention of the parties as to the law with reference to which they intended to contract presents an issue of fact, and not one of law (see *Shillito* v. *Reineking, supra,* 17 C. J. S., Contracts, § 610, p. 1270); and, therefore, the question whether the action is barred by the Statute of Limitations also presents a question of fact (see 37 C. J., Limitations of Actions, § 783), which, under elementary principles, cannot be decided on a motion for summary judgment. (See *Chelsea Exchange Bank* v. *Munoz,* 202 App. Div. 702.)

The motion for summary judgment is denied.