**In re SHANGRI–LA NURSING CENTER, INC., Debtor.**

**Bankruptcy No. 182–10943–260.**

United States Bankruptcy Court, E.D. New York.

June 29, 1983.

Hahn & Hessen, New York City, for Catonsville Nursing and Convalescence Center, Inc.

Raymond J. Aab, New York City, for trustee.

Louis P. Rosenberg, Brooklyn, N.Y., for debtor.

## DECISION AND ORDER

CONRAD B. DUBERSTEIN, Bankruptcy Judge.

This is a decision on a motion by a trustee in bankruptcy to reject an alleged executory contract between a Chapter 7 debtor, Shangri-la Nursing Center, Inc., and Catonsville Nursing and Convalescence Center, Inc.

### FACTS

The debtor, Shangri-la, filed a voluntary Chapter 7 petition in bankruptcy on April 12, 1982. On December 11, 1980, some fifteen months prior to the filing of this petition, an agreement involving real and personal property was entered into between Mr. Dexter Case and the debtor and its sole stockholder, Mr. Joseph Loveman. At the time Loveman was the owner of real property located in Catonsville, Maryland. The building on the property was leased to the debtor where it operated a nursing home. Inasmuch as the debtor was unable to operate the nursing home any longer, Loveman, in the first part of the agreement, agreed to lease to Case for a period of ten years, the real property including the land and the building occupied by the debtor, for an aggregate rental of $2,000,000. The second part of the agreement provided for Case to purchase from the debtor all "machinery, equipment and furniture" owned by the debtor for use on the premises as a nursing home facility. The purchase price of this property was $60,000 payable at closing.

On January 23, 1981 the agreement was amended. In the amended agreement the purported "sale" of equipment from the debtor to Case was changed to a "lease" of equipment, and the "purchase" of equipment was changed to a "rental" of equipment. In addition, the amended agreement gave Case the option to purchase the equipment at the conclusion of the lease for the nominal sum of $1.00. The essential provisions of the agreement were otherwise unchanged.

Case subsequently assigned his interest in both the real property and the equipment to another party. Ultimately, the agreement was reassigned to the respondent in this action, Catonsville Nursing and Convalescence Center, Inc. (CNCC).

The trustee has, pursuant to Section 365 of the Bankruptcy Code, moved to reject the equipment portion of the agreement between Shangri-la and CNCC and to sell that equipment, arguing that it was the intention of the original parties that the transaction be considered a lease and not a sale thus making it an executory contract susceptible to rejection.[1] In support of this position he has offered as evidence an affidavit from Case as well as the transcript of a deposition taken from Loveman. It is CNCC's position that the so called "lease" of equipment, which it took as an assignee, is in reality a "sale" and therefore the equipment is not property of the debtor's estate and the agreement by which it was acquired is not executory, and as such it cannot be rejected by the trustee.

## DISCUSSION AND CONCLUSIONS

### A. *Choice of Laws*

The first issue that must be addressed is the question of which body of law will be

---

1. The existence of an executory contract gives the trustee in bankruptcy the power to reject or assume that contract subject to the approval of the court. 11 U.S.C. Section 365(a). Rejection of an executory contract does not necessarily require an affirmative act by the debtor. If the trustee does not either assume or reject the contract within 60 days of the order for relief it is automatically deemed rejected. 11 U.S.C. Section 365(d)(1).

applied. It is axiomatic that federal courts faced with substantive non-federal questions must look to the laws of the state in which they sit. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). This requirement has been specifically held to apply to choice of laws questions. *Klaxon Co. v. Stentor Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Thus, because this court sits in the State of New York we will look to the laws of this State in order to determine which body of substantive law will be followed.

It is well established law in New York that the construction and validity of a contract is governed by the laws of the place where it is made unless the parties indicate otherwise. *Auten v. Auten,* 308 N.Y. 155, 124 N.E.2d 99 (1954); *Union Nat. Bank v. Chapman,* 169 N.Y. 538, 62 N.E. 672 (1902). The subject agreement was prepared, entered into, and performed entirely within the State of Maryland. Moreover, there is no indication that the parties intended the laws of any other state to apply. Accordingly, all substantive nonfederal questions in this matter are governed by Maryland law.

B. *Evidence*

Having resolved the choice of laws question, we now turn our attention to questions pertaining to the admissibility of certain evidence presented by the parties.

The trustee is attempting to show by use of an affidavit of Case and a deposition taken of Loveman, that it was the intention of the parties that the subject agreement be a simple lease and not a sale or a lease intended as security. Whether or not such evidence is admissible is an evidentiary question interpreted under federal law. This is so because rules of evidence are not substantive in nature, *Central V.R. Co. v. White,* 238 U.S. 507, 35 S.Ct. 865, 59 L.Ed. 1433 (1914), and therefore, the Erie Doctrine does not apply to them. *See, Erie v. Tompkins, supra.*

Out-of-court statements, if offered to prove the truth of the matter asserted

therein, are hearsay and generally inadmissible as evidence in federal courts. Fed.R. of Evid. 802. The policy of the hearsay rule is to permit confrontation. *U.S. v. Dennis,* 625 F.2d 782 (8th Cir.1980); *U.S. v. National Homes Corp.,* 196 F.Supp. 370 (D.C.Ind. 1961).

In the absence of a reasonable opportunity to confront a declarant the evidence is inadmissible. Since the affidavit of Case does not afford CNCC, the party against whom it is being used, an opportunity to cross examine the declarant, Case, it is inadmissible as hearsay. *See, NLRB v. McClure Associates, Inc.,* 556 F.2d 725 (4th Cir.1977).

For a similar reason the deposition of Loveman is inadmissible for the purpose of proving what the intent of the parties was with respect to the subject agreement. This is so because CNCC was not present at the taking of this deposition. A deposition may not be used against a party who was not present at its taking, Fed.R. of Civ.Pro. 32(a), because the use of such evidence interferes with the right of confrontation and thus constitutes an impermissible use of hearsay. *Hoover v. Switlik Parachute Co.,* 663 F.2d 964 (9th Cir.1981).

In addition to being inadmissible hearsay, both the affidavit and the deposition violate the parol evidence rule and cannot, for that reason, be properly considered. The parol evidence rule, however, is not truly a rule of evidence. It is regarded as a substantive rule of law, *Higgs v. DeMaziroff,* 263 N.Y. 473, 189 N.E. 555 (1934), and is therefore subject to a choice of laws analysis. As noted above, we have previously made that analysis and have concluded that Maryland law will apply in this case.

Both the affidavit and the deposition are being offered as evidence to vary the terms of a written contract by attempting to show that the intent of the parties was different than would appear from a simple, albeit educated, reading of the contract. As such they constitute parol evidence. It is a well established rule in Mary-

land that parol or extrinsic evidence is inadmissible to add to, contradict or vary the terms of a written contract. *Kverda v. Mondravitzly,* 125 A. 591, 145 Md. 260 (1924); *Crothers v. National Bank of Chesapeake City,* 149 A. 270, 158 Md. 587 (1930); *Warren Glass Works Co. v. Keystone,* 5 A. 253, 65 Md. 547 (1886). It must be presumed that when an agreement is reduced to writing it embodies the full intent of the parties, *Delamater v. Chappell,* 48 Md. 244 (1878), particularly "where the contract is susceptible of a sensible construction and there is no evidence of mistake or fraud." *Moran v. Prather,* 90 U.S. 492, 23 L.Ed. 121 (1874).

We find that the agreement is susceptible of a sensible construction. Further, we find no evidence of fraud or mistake. Therefore, we will not consider either the affidavit of Case or the deposition of Loveman but will look solely to the "four corners" of the contract.

C. *Lease versus Lease Intended as Security*

 The trustee argues that the subject agreement is an executory lease thereby making it susceptible to rejection pursuant to 11 U.S.C. Section 365. According to the classic definition, an executory agreement is one in which the obligations of each party are so unperformed that if either failed to complete performance a material breach of the agreement would occur. *Jenson v. Continental Financial Corp.,* 591 F.2d 477 (8th Cir.1979); *In re Knutson,* 563 F.2d 916 (8th Cir.1977); *In re Davies,* 27 B.R. 898 (Bkrtcy. E.D.N.Y.1983). *See also,* Countryman *"Executory Contracts in Bankruptcy: Part I"* 57 Min.L.Rev. 439 (1973); Countryman, *"Executory Contracts in Bankruptcy: Part II"* 58 Min.L.Rev. 479 (1974).

If one were to apply this definition in a rigid fashion it would be difficult to find a contract that was not in some sense still executory since all contracts to a greater or lesser extent are executory for when they cease to be so, they cease to be contracts. S. Williston, *A Treatise on the Law of Contracts,* Section 14 (3d ed. 1957). The actual application of this definition must therefore be more pragmatic. If the agreement is in fact an unexpired lease of equipment then it is executory. If, however, it is actually a lease intended as security in which rental payments will be substantially equal to the purchase price and the lessee retains an option to purchase the equipment at the end of the lease for a nominal sum then it is not executory. *See,* Mooney, *True Lease or Lease "Intended as Security"—Treatment by the Courts,* Benders U.C.C.Serv.Col. 1C at 2942; *See also,* Fritch & Reisman, *Equipment Leasing—Leverage Leasing* (PLI 2d ed. 1980).

 The Uniform Commercial Code in Section 1–201(37) states that whether a lease is intended as security depends on the intentions of the parties. That intent, however, must be measured by objective and not subjective standards. According to one authority:

"It is clear enough that 'intended' in (Section 1–201(37)) has nothing to do with the subjective intention of the parties, or either of them." (1 Gilmore Section 11.2, at 328). Rather the emphasis should be on the legal *effect* or *function* of the transaction, if the parties sincerely believe that they are entering into a "lease" agreement, with all that such an agreement entails, but the characteristics of the transaction show that it is, in essence, a "sale", then it should be treated as a "sale" and would thus be "intended as security". It is what the parties intended to happen, judged by the effects of the terms of the agreement, that should govern not the label which the parties intended the transaction to bear. Mooney, *supra,* at 2943. *See also, In re Winston Mills,* 6 B.R. 587 (Bkrtcy.S.D.N.Y.1980).

 In Maryland, whose law it has previously been determined will apply in this case, a "lease" which contains an option for the lessee to purchase the leased goods after complying with the terms of the agreement for a nominal or for no consideration, is in virtually every situation one "intended for security." *Waldron v. Best T.V. and Stereo Rentals, Inc.,* 485 F.Supp. 718 (D.Md.

372

1979); *Beckwith Machinery Co. v. Matthews,* 190 Md. 182, 57 A.2d 796 (Ct. of App.Md.1948). Because CNCC has already paid the entire rental fee in advance the only thing it need do to exercise its right to acquire title to the equipment is to pay the sum of one dollar to the debtor. The powerful economic incentive for doing so is clearly apparent and is a notable factor favoring a conclusion that the lease was one intended as security. *In re Alpha Creamery Co., Inc.,* 4 U.C.C.Rep.Serv. 794 (W.D. Mich.1967). It is also significant that the agreement does not provide an option to terminate prior to its expiration. If such an option existed it would tend to indicate that the lease was not one intended for security. *In re Kwik-N-Handi, Inc.,* 13 U.C. C.Rep.Serv. 960 (Ref.Bkrtcy.M.D.Ga.1973).

In short, we find that an objective analysis of the pertinent terms of the agreement clearly favor an interpretation of it as one intended for security thus rendering it immune from rejection by the trustee.

D. *Business Judgment Test*

In addition, we concur with the equitable concerns of CNCC that rejection of the equipment agreement would likely result in catastrophic harm to its business for it would be impossible to make use of the real property leased from Loveman as a nursing home if the equipment were removed from it. The two are necessarily and obviously interconnected. Therefore, it would be manifestly unfair to permit rejection of the equipment portion of the agreement even if it were, for the sake of argument, a true lease. This finding is based on the "business judgment" test employed by courts faced with attempts by trustees in bankruptcy to assume or reject executory contracts. *See, Matter of Minges,* 602 F.2d 38, 43 (2nd Cir.1979). The trustee has not presented convincing evidence that rejection of the contract will further benefit the debtor's estate. Indeed, the debtor has already secured the full benefit of its bargain by receiving the entire $60,000 payment in advance. If the trustee were permitted to

reject the agreement it might conceivably worsen the debtor's position by exposing it to liability for breach of contract. CNCC on the other hand has raised a serious question concerning its ability to remain a viable entity if rejection is permitted. Accordingly, we believe that the "business judgment" test dictates that the agreement remain intact.

ORDER

Therefore, it is ORDERED that the trustee's motion to reject the agreement between the debtor Shangri-la and CNCC is denied.