## BENJAMIN S. GOLDBERG, ET AL. *v.* CARL J. KUNZ

[No. 34, October Term, 1945.]

*Decided January 8, 1946.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*A. Frederick Taylor,* with whom were *Allers* and *Cochran,* on the brief, for the appellants.

*Rignal W. Baldwin, Jr.,* with whom were *Charles O. Mount* and *Semmes, Bowen & Semmes* on the brief, for the appellee.

GRASON, J., delivered the opinion of the Court.

Herman S. Goldberg and Irwin Cross, as co-partners, trading as Calvert Auto Service, maintained and operated a public parking lot and garage at 414 North Calvert Street, in the City of Baltimore. James W. Collins was employed by Carl J. Kunz, who operated the Kunz Motion Picture Service. Collins had charge of three automobiles, one of which was a 1942 Pontiac Eight, which he stored on a parking lot. He was leaving for Florida for ten days and he told Cross, one of the partners, he was "going to store my car there (the Pontiac

automobile referred to) until I came back, and I told him positively not to let anyone who came in the place get the keys from him. He told me the keys would be in the safe and he wouldn't get them out until I called for them. He said if I came in there at night no one would give me those keys." Collins also said: "I paid for all the rest of my cars over there (that is, the cars of his employer) and he gave us a once a month statement for parking cars."

On April 23, 1944, this Pontiac car was taken from the defendants' garage by a colored man by the name of Tinsley. When found, it was practically demolished. Tinsley was indicted in the Criminal Court of Baltimore and was convicted under a count which charged him with the unauthorized use of this Pontiac automobile, and sentenced to six months in jail. This automobile was insured by Kunz and the insurance company paid the damage which Kunz sustained.

This case was instituted by Carl J. Kunz, individually and trading as Kunz Motion Picture Service, to its own use and to the use of the Automobile Insurance Company of Hartford, Connecticut, against Herman S. Goldberg and Irwin Cross, individually and as co-partners trading as the Calvert Auto Service. It is grounded on the alleged breach of the contract of bailment between Kunz and the defendants. The case went to trial under the general issue pleas, and from a judgment for $1481.38 in favor of the plaintiff against the defendants the case comes here on appeal.

The fact that the car was taken by Tinsley without the consent of Kunz or his agents, and demolished by him, is not denied. Cross testified that he employed Tinsley and put him to work on the parking lot across the street from the garage. He watched him, and he seemed to be an especially good man. He was a good driver, polite, "and evenings when he would check up with me all of his collections were straight; in other words, I was pleased with the man as an employee."

After Tinsley had been employed by Cross for about three weeks he let him work on a Sunday, for which he was paid extra. The "next time, his turn for Sunday work, that is when I was called from the Northeastern Police Station, I guess it was, that this car was found in Shields Alley all smashed up." In answer to a question "what were your instructions to Tinsley concerning the use of automobiles? A. He was to take no cars off the lot or out of the garage; he had no reason to drive any cars off of the lot or out of the garage, he was strictly an attendant to watch the lot and the garage whenever he was there on Sunday." When Tinsley was in charge of the garage on Sunday no one else was there. On cross-examination he testified he didn't know positively where Tinsley worked before he employed him but he believed that it was at the Biltmore Garage. He did not call the Biltmore Garage to learn what sort of a man Tinsley was; and so far as this record shows, he did not require references or make any inquiry at all concerning Tinsley. He put Tinsley, a colored man whom he knew nothing whatever about, who had worked for him for only three weeks, in complete charge of the garage on a Sunday, where, no doubt, automobiles of great value were stored. He did not deny he told Collins that the keys to the automobile in question would be put in a safe and that he wouldn't be able to get the car if he called for it at night, as no one would give him the keys. The testimony is a total blank as to where Cross put the keys to this car and as to how Tinsley got possession of them.

The testimony recited comprises all of the material facts given in evidence, and is uncontradicted.

The defendant offered four prayers, which the Court rejected. Each prayer asked the Court to withdraw the case from the jury and direct a verdict for the defendants. There was no exception taken to the Court's charge to the jury. The sole question, therefore, is whether the Court was correct in submitting this case to the jury.

This is a case of bailment. The defendants contracted with the plaintiff, through his agent, Collins, to store the automobile in question and to safely deliver the same to the plaintiff or his agents when demanded, and for this service the defendants were paid. It is clear that plaintiff was a bailor and the defendants bailees. It was the duty of the defendants under this contract, to deliver the automobile when called for, and upon proof of failure to deliver the automobile in question the plaintiff made out a *prima facie* case of breach of contract.

"It is the duty in general of one operating a garage in which automobiles are kept in storage for pay to exercise ordinary care by the employment of trustworthy servants and otherwise for the safe-keeping of the cars in his charge. * * * Nevertheless, when the proof establishes that a stored car, while in charge of the garage keeper, has been taken out and used by an employee of the latter, without the knowledge or consent of the owner, and has been damaged by such use, such proof, standing alone and unexplained, is sufficient to make out a *prima facie* case for a recovery by the plaintiff." *Medes v. Hornbach*, 56 App. D. C. 13, 6 F. 2d 711, 712. See authorities cited in that case.

"Defendant does not question the law as stated in *Byalos v. Matheson*, 243 Ill. App. 60, affirmed 328 Ill. 269, 159 N. E. 242; *Scherb v. Randolph Wells Auto Park, Inc.*, 301 Ill. App. 298, 22 N. E. 2d 796, and *Clemenson v. Whitney*, 238 Ill. App. 308. These cases follow the early case of *Cumins v. Wood*, 44 Ill. 416, 92 Am. Dec. 189, where it was held that where the bailor shows he has stored goods in good condition with the bailee and the goods are returned to him damaged or not returned at all, the law presumes negligence of the bailee unless he shows the loss did not result from his negligence." *Standard, Inc. v. Kirby*, 319 Ill. App. 206, 48 N. E. 2d 716.

"The defendant, as bailee for hire of the automobile and its contents, was bound to exercise due care in order to return them to the owner in as good condition as re-

ceived." *Stevens v. St. Botolph Holding Co.*, 316 Mass. 238, 55 N. E. 2d 450; *Smith v. Bailey,* 195 Mich. 105, 161 N. W. 822; *Renfroe v. Fouche,* 26 Ga. App. 340, 106 S. E. 303; *Byalos v. Matheson,* 328 Ill. 269, 159 N. E. 242; *Quinn v. Milner,* D. C. Mun. App. 34 A. 2d 259; *Employers' Fire Ins. Co. v. Consolidated Garage & Sales Co.,* 85 Ind. App. 674, 155 N. E. 533.

"It was the duty of the defendant to use ordinary care to employ a trustworthy servant in charge of the garage, and if he failed to do so he would be responsible for the damages arising from employing an untrustworthy servant to have charge of the garage." *Handley v. O'Gorman,* 45 R. I. 242, 121 A. 399, 400.

In this state of the case it was incumbent upon defendants to produce evidence that was a legal excuse for the nondelivery of the automobile. Their position is that when Tinsley took the automobile from their garage he stepped out of the line of his duty to them and proceeded to use the automobile for his own purposes and benefit. They contend that cases like *Symington v. Sipes,* 121 Md. 313, 88 A. 134, 136, are applicable. There it was said:

"This Court * * * has repeatedly applied the general and elementary rule that the master is liable for the negligent act of the servant only when it is committed within the scope of the service for which he is employed."

This contention does not take into consideration whether the defendants were negligent in placing automobiles of great value in charge of a colored man whom they knew nothing whatsoever about at the time of his employment, and who had only been with them not more than three weeks when they placed him in such a responsible position. Neither does it take into consideration the utter absence of testimony to show what Cross did with the keys of the automobile after he received them from Collins, or where or how Tinsley came into possession of them. The defendants were certainly charged with the exercise of ordinary care and prudence in the protection

of plaintiff's automobile. If the minds of reasonable men could differ on the question of the exercise of such care and prudence by the defendants, the matter would have to be determined by the jury. The Court, in its charge to the jury, said:

"Another point that I want to make clear upon the suggestion of counsel is that although the employee had no right to take the car, in so far as the owner was concerned, and, possibly as to his employer, that what he did was wrong, the question is whether the defendants were negligent, and in determining that question you consider all the points that you think proper to consider, whether the defendants used due care in selecting the employee, whether they used due care in leaving him (Tinsley) in charge of the premises, and all other facts that you think appropriate in coming to a conclusion on the question of negligence."

We think the question of whether the defendants were negligent in employing Tinsley and in trusting to his care and protection the automobile of the plaintiff, was a question for the jury and that the matter was fairly submitted to the jury under the portion of the lower court's charge we have quoted.

As the case is thus disposed of on the grounds on which it was submitted to the jury, it is unnecessary to consider any broader ground of possible liability, *e.g.,* whether (without negligence in employing Tinsley or in keeping the keys) Tinsley's unauthorized act in taking the car was a breach of the defendants' undertaking (by them entrusted to Tinsley) to exercise due care to keep the car safely. On this question authorities in other jurisdictions are in conflict. Nothing in this opinion or in opinions here quoted or cited is to be taken as any intimation of opinion by this Court on this question.

*Judgment affirmed, with costs.*