## SCHLEISNER COMPANY, INC *v.* BIRCHETT

[No. 137, October Term, 1952.]

*Decided May 15, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Daniel B. Leonard,* with whom were *Bowie, Burke & Leonard* on the brief, for the appellant.

*Emanuel H. Horn,* with whom were *Dickerson, Nice & Sokol* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment in the amount of $595.00, entered upon a jury's verdict in the Superior Court of Baltimore City, representing the value of a fur coat owned by the plaintiff which disappeared from the premises of her employer during working hours. The court denied motions for directed verdicts and submitted two issues to the jury: (1) whether the appellant furnished a reasonably safe place for the appellee to keep her garments and (2) whether the appellant's personnel manager had apparent authority or power to bind the

appellant by an indemnity agreement the appellee testified he had made with her. The jury found in favor of the appellee on both issues.

The appellant operates a department store at Howard and Saratoga Streets, in Baltimore City. In September, 1950 the appellee was employed as a result of an interview with Hiram R. Cannon, who testified that he was the "general superintendent" of the store. The other officials testified that he was the personnel manager. Mrs. Birchett testified that Mr. Cannon told her: " 'Now, Mrs. Birchett, we will not issue any locker to you, for, in the first place, there are not enough lockers available just at this time. However, you may put your garments into the Executive corridor closet and they will be very well taken care of there. We will be responsible for it.' I said 'Mr. Cannon, every place else I have been employed I have always had a locker of my own. Do you think they will be safe?' He said, 'They are. We will be responsible for them.' " Mr. Cannon showed her where the Executive closet was, on the third floor, and personally hung up her coat on that first occasion. She was employed as a floor manager on the second floor. None of the employees was allowed to keep garments on the second floor. In the rear of the third floor there were 96 lockers, to which the employees below executive rank were assigned space and given keys.

Mr. Cannon testified that he did not recall any discussion about responsibility, but he admitted that Mrs. Birchett asked for a locker and he told her "that would not be necessary, that she could use the executive closet * * *." He also admitted telling her, when the loss was reported to him, "I presumed that we had insurance to cover such losses." The operating manager of the store, Mr. Volz, testified that Mr. Cannon was authorized "to interview applicants, to assign them to the necessary jobs, the hour schedules and the wage arrangements * * *." Part of Mr. Cannon's job was to tell new employees where to keep their hats and coats. This testi-

mony was confirmed by Mr. Schleisner, the President of the appellant corporation. However, Mr. Volz testified he had given Mr. Cannon no authority to assume responsibility on behalf of the store, and Mr. Schleisner, according to Mrs. Birchett, told her he could not pay for the loss of her coat, because if he did he might become liable for any merchandise that was taken. She also testified he told her (he could not recall) that while he could not pay for the coat he would give her a salary increase of $10.00 a week to compensate for her loss. She declined to accept this.

At the time of the loss, the Executive closet had no lock or key. Besides space for hanging garments it contained stationery supplies. There was no watchman detailed there, but there were secretaries' desks in the corridor. On the afternoon of December 12, 1950 the appellee, on returning from lunch, gave her fur coat, which she had bought on December 9, to Miss Parker, an assistant buyer whose duty it was to relieve her in charge of the floor during lunch hour, and asked her to hang it in the Executive closet. Miss Parker testified that she did so. At closing time the coat was gone. No explanation was offered for the disappearance. After the loss, locks were placed on the closet door. According to Mrs. Birchett, Mr. Cannon told her if her coat was not found there certainly would be insurance to cover it. "If not he said, he was quite positive that Mr. Schleisner would take care of it, that Mr. Schleisner would be sure to take care of the loss of my coat. In fact, he guaranteed it." Mrs. Birchett resigned in January and brought this action. The declaration alleged a breach of contract of bailment.

We think it is quite clear that the case falls into the legal category of a bailment "which may be classified as lucrative or a bailment for profit, for the mutual benefit of the parties. * * * The bailee was therefore under a duty to use ordinary care and diligence in safeguarding the bailor's property, and subject to liability for any failure to perform that duty." *Refining Co. v. Harvester*

*Co.,* 173 Md. 404, 415, 196 A. 131, 136. In that case, there was a contract for the repair of a disabled truck which was damaged when the repairer's agent undertook to tow it to the garage and did so in a negligent manner. The towing was only incidental to the repair, but it was recognized that the bailment was not merely gratuitous or involuntary, as in *Mickey v. Sears, Roebuck & Co.,* 196 Md. 326, 330-331, 76 A. 2d 350, 352, and *Schermer v. Neurath,* 54 Md. 491, although there was no charge for the service, as there was in *Goldberg v. Kunz,* 185 Md. 492, 45 A. 2d 279, and cases there cited, so as to make it a bailment for hire.

In the instant case the employee was not merely permitted to keep her coat in the executive closet, she was instructed to put it there and denied the use of a locker. It was to her employer's interest to have her coat kept out of the way of customers. The deposit of her coat in the place specified was thus a condition of her employment, and it is not disputed that the personnel manager had authority to give her this instruction, regardless of whether he had authority to guarantee her against loss under any circumstances. The closest case on the facts that we have found is *Kampf v. Yokell,* 1944, 267 App. Div. 914, 47 N. Y. S. 2d 195. In that case a sales girl was permitted to keep her coat in a certain dressing room, from whence it was stolen. The court said: "There was an express invitation to plaintiff, held out by defendants, to place her coat in the dressing room and thus yield her personal vigilance during her working hours. There was a bailment for the mutual benefit of plaintiff and defendants. * * * There was a consequent duty upon defendants to deliver the coat on demand or to account for its absence. Their failure to do either is *prima facie* evidence of negligence. * * * In any event, there was a question of fact as to whether the defendants exercised the degree of care required, * * *." The court relied upon the case of *Bunnell v. Stern et al.,* 122 N. Y. 539, 25 N. E. 910, 10 L. R. A. 481, where the coat of a customer was stolen while she was trying on another

garment. Many cases have dealt with this situation, and recovery has generally been allowed, if knowledge of the customer's action in leaving the coat in the actual or constructive possession and control of the operators of the store can be brought home to them. *Cf. Webster v. Lane,* 125 Misc. 868, 212 N. Y. S. 298, and *Theobald v. Satterthwaite,* 30 Wash. 2d 92, 190 P. 2d 714, and see cases collected in the note, 1 A. L. R. 2d 802. See also 4 *Williston, Contracts,* (Rev. ed.), p. 2904, and note 4 N. Y. L. R. 396. There is no difficulty about knowledge in the instant case, and we think there was a surrender of at least constructive control to the employer, by leaving the coat in the designated place.

It has been held that upon proof of facts giving rise to a bailment for hire or for mutual benefit, the burden of proof is upon the bailee to account for the property, and where a demand and an unexplained failure to deliver is proven, a *prima facie* case of negligence is made out; but when the loss or injury is accounted for as having been occasioned by some of the causes which excuse the bailee, then the defense is complete, unless the plaintiff further shows that the bailee, by exercising ordinary diligence, might have avoided the loss or injury; that the burden of proving negligence never shifts from the plaintiff. In that case (*Claflin v. Meyer,* 75 N. Y. 260) the goods were lost by a burglary. The court says: "Upon its appearing that the goods were lost by a burglary committed upon the defendants' warehouse, it was for the plaintiffs to establish affirmatively that such burglary was occasioned or was not prevented by reason of some negligence or omission of due care on the part of the warehouseman." *Cf. Gray v. Frazier,* 138 Md. 189, 148 A. 457; *Roueche v. Hotel Braddock,* 164 Md. 620, 165 A. 891; *Goldberg v. Kunz, supra,* and *Mickey v. Sears, Roebuck & Co., supra.* See also the cases cited in 1 A. L. R. 2d 804, *supra.*

In the instant case the undisputed facts established a bailment for mutual benefit, and the question whether the closet was a reasonably safe place under the cir-

,cumstances, which was submitted to the jury, was at least as favorable to the defendant as it was entitled to, and was tantamount to an instruction that the defendant would not be liable unless the jury found that the defendant failed to exercise due care in safeguarding the plaintiff's coat. The defendant was not entitled to an instructed verdict on the ground that the plaintiff voluntarily assumed the risk of the loss of her coat.

The defendant also noted an objection, however, to the court's charge on the first issue on the ground that it "assumes that there is an unqualified duty on the part of the employer to furnish a reasonably safe place * * * for its employee, Mrs. Birchett, * * * to store or leave her * * * fur coat, without the consideration on the jury's part of the question of contributory negligence on the part of the employee in her assumption of risk." As pointed out in *Bull S. S. Line v. Fisher, to Use of Globe Indemnity Co.*, 196 Md. 519, 77 A. 2d 142, the distinction between contributory negligence and assumption of risk is often difficult to draw, but usually without practical importance. In the instant case it may be noted that liability is not predicated upon a relation of master and servant, to which the doctrine is generally applied, but upon the law of bailment, the relationship being only important as bearing upon the class of bailment and the extent of the duty owed. Since the surrender by her of the coat, by placing it in the designated place, was upon definite instructions and a condition of her employment, upon assurances of its safety and over her objection, we think that she could not be held, under the circumstances, to have assumed the risk of loss. *Cf. Refining Co. v. Harvester Co., supra*, 173 Md. at page 415, 196 A. at page 136. Since there was no evidence from which it could be inferred that she assumed the risk, we find no error in the refusal to instruct the jury as requested.

Finding no reversible error in the submission of the first issue to the jury, it is unnecessary to discuss the second issue submitted.

*Judgment affirmed, with costs.*