PROVENZA *v.* PROVENZA

[No. 267, September Term, 1960.]

(Two Appeals In One Record)

*Decided July 5, 1961.*

The cause was argued before BRUNE, C. J., and HENDER-SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Herbert Myerberg,* for appellant.

*Z. Townsend Parks, Jr.,* for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a decree awarding permanent alimony, without divorce, to a wife in the amount of $100 a week, awarding her custody of a minor child born in 1950 and the sum of $25 a week for support, ordering the payment of a counsel fee of $750 to the wife's solicitor, and dismissing the husband's cross-bill praying an absolute divorce. The chancellor also allowed a $350 counsel fee for the appeal to this Court.

The parties were married in 1946 and apparently lived

happily together until 1956. The appellant is a dentist, and in that year he sold his general practice to a Dr. Pessagno, with whom he shared an office, practicing his specialty, orthodontry. According to the wife, he became cool towards her and began to show an interest in Mrs. Pessagno. On June 6, 1957, again according to the wife, he ordered her from the marital bedroom and thereafter refused sexual relations. A neighbor, Mrs. Armanas, testified the husband told her he did not love his wife. The husband admitted making this statement. A maid testified she heard the husband tell the wife he didn't love her and "to get the hell out of the [bed] room." According to the husband the wife was the one who refused sexual relations, probably because of a fear of pregnancy and also because of an unreasonable jealousy of Mrs. Pessagno. It appears that the two couples were intimate and frequently visited in their respective homes. There was testimony that Mrs. Provenza on one occasion told Mrs. Armanas that she thought her husband was having an affair with Mrs. Pessagno and made a similar statement to a Mrs. Adams when she was staying with the Provenzas. On one occasion she set fire to a sofa in the Pessagno home because Mrs. Pessagno had seated herself between her husband's legs and he was caressing her while they were watching movies. There was other testimony as to her neurotic behavior, and that, at his request, she consulted a psychiatrist but discontinued the treatment he recommended.

The husband left the home in April, 1959, and never returned. He closed all department store accounts, closed their joint banking account, and instructed his wife not to charge anything to him or write any checks. He sent her a check for $50 in a letter stating: "If you give me a divorce, I am willing to pay you more than the law is going to require me. You will be able to live better and everyone concerned will be happier. If I have to do it the hard way, I'll get the divorce, and you won't be any better off. Talk it over with Mr. Parks."

The appellant contends that there was no corroboration of the wife's version of the cause for cessation of marital re-

lations. We think however, there was some corroboration in the testimony of Mrs. Armanas and the maid. Also her claim of actual desertion is sufficiently corroborated. The only conflict in the testimony is as to whether his departure was justified. Since the husband was the one to leave and make the final break, it was incumbent upon him to support his claim of constructive desertion. Cf. *Smith v. Smith,* 225 Md. 282, 287. The chancellor found that his departure was unjustified, and we cannot say that he was clearly wrong upon the record. The chancellor's finding that the husband deserted his wife without just cause supports an award of permanent alimony. Code (1957), Art. 16, sec. 25; *Foote v. Foote,* 190 Md. 171, 178; *Hull v. Hull,* 201 Md. 225, 232.

The appellant argues that the "clear error" rule, Maryland Rule 886 a, is inapplicable because the chancellor held the case *sub curia* for nearly a year after the trial. But that fact alone would not support the appellant's inference that the chancellor had forgotten the essential facts developed at the trial and his impression of the witnesses. The chancellor indicated that he had withheld decision in the hope that the parties might become reconciled and stated that "[e]very effort has been made by the Court and by counsel to settle the differences, but without any final result." The appellant also argues that he was justified in leaving because of the wife's neurotic conduct and particularly her unfounded accusations of infidelity, citing *Sullivan v. Sullivan,* 223 Md. 74, and *Kruse v. Kruse,* 179 Md. 657. But we think those cases are distinguishable on the facts. The voicing of her suspicions as to his fondness for Mrs. Pessagno fell somewhat short of a charge of adultery, and her statements were made in confidence to close friends and not, as in the cases cited, in a deliberate effort to embarrass him in his business and social relations. Cf. *Stevens v. Stevens,* 183 Md. 599, 602.

The appellant further contends that the awards of alimony and counsel fees are excessive, and in this we agree. Dr. Provenza's income, after business expenses but before taxes, was shown to be about $11,000 a year. She occupies the house which they own as tenants by the entireties. The awards of

alimony and support amount to $6,500 a year, or about 60% of his total income. He has no capital assets. Their standard of living was moderate. Even taking into account the fact that mortgage payments made by her inure in part to his benefit and that she will be required to pay income taxes upon the alimony payments, we think the award is excessive under the existing circumstances. Cf. *Tumminello v. Tumminello*, 205 Md. 609, and *Newmeyer v. Newmeyer*, 216 Md. 431. We think the award of alimony should be reduced to $75 per week and that the counsel fees should be reduced to $500 for services below and $250 in this Court. The allowance of $25 per week for support of the child is affirmed.

> *Decree modified, and as modified, affirmed, costs to be paid by the appellant.*