GOODMAN, ET UX. *v.* WINSKOWSKI

[No. 188, September Term, 1967.]

*Decided April 30, 1968.*

*Motion for rehearing filed May 30, 1968; denied May 31, 1968.*

The cause was argued before HAMMOND, C. J., and HORNEY, MARBURY, BARNES, MCWILLIAMS and SINGLEY, JJ.

*Arold E. Ripperger* and *Douglas N. Sharretts* for appellants.

*William F. Mosner,* with whom were *Power & Mosner* on the brief, for appellee.

MARBURY, J., delivered the opinion of the Court.

In contemplation of building a house in Baltimore County, the defendant-appellant, Lawrence H. Goodman, went to the Maryland National Bank for the purpose of applying for a building loan. In pursuit of this end he filed a loan application containing the information that the lot had cost $10,000 and that the proposed house would cost $71,000. How the $71,000 figure was arrived at is in dispute, the appellant claiming that a vice president of the bank, a Mr. Herring, told him to inflate the amount so that the desired loan could be obtained, while Mr. Herring, who denied this version, said that Mr. Goodman gave him the $71,000 figure based on the cost per cubic foot

estimate and that such an estimate was in line with a luxury home of this size and type.

Following the making of the loan application Mr. Goodman, in quest of a builder, contacted a friend, Mr. Dale Hess, a Harford County builder, and inquired if he would be interested in contracting for the construction of the proposed home. Mr. Hess declined the offer as he did not do this type of work, but suggested that Mr. Goodman contact Marvel L. Winskowski, the appellee here, who did this type of construction. A meeting was arranged at the Hess home and after a brief examination of the plans which had previously been prepared by an architect, the appellee stated that he thought the house could be built for approximately $50,000, but that he would not agree to build it for a set price and would only undertake the job on the basis of cost of labor and materials plus a 10% builder's profit. It was agreed that the appellee would undertake the work and on May 28, 1964, before any written contract had been executed, Mr. Winskowski, the builder, began work on the site. On May 29, 1964, both appellants, Mr. Goodman and his wife, went to the appellee's home where Mr. Goodman showed the builder a written contract with a $50,000 ceiling, which the builder at first declined to sign as he had not figured the job. What followed is disputed. Mr. Goodman testified that the instrument meant what it said and was intended to bind all parties. The builder maintained that he refused to agree to a firm price but that Mr. Goodman assured him that he would not hold him to the contract but that it was necessary in order to get a loan from the bank. Both Goodman and Winskowski signed the contract and it was also signed by Mrs. Goodman at a later time, though she was not present when the negotiations leading up to the signing of the written contract took place. The discussion and signing of the contract by Goodman and Winskowski took place in the office of George Cairnes, an insurance agent. Mr. Cairnes' testimony corroborated that given by the appellee.

As the work progressed the builder sent the Goodmans monthly statements for the cost of labor and materials for the prior month plus 10% builder's fee. The first of these bills was sent on July 1, 1964, and they continued to be sent through

February 1, 1965, when the final bill was submitted. These bills were paid as submitted until November 1964, when the bill for that month in the amount of $8,486.02 was not paid. It was re-billed on December 1 along with the $8,467.24 due on that month's bill. $3,400 of the November bill was paid by the bank on December 11, and on December 29 Mr. Goodman paid by personal check the December billing of $8,467.24, leaving a balance due of $5,086.02. As of December the Goodmans had been billed $60,738.06 of which they had paid $55,652.04. There was no bill submitted in January 1965, but on February 1, 1965, a final bill was submitted in the amount of $28,506.75, which included the $5,086.02 left unpaid from the bill sent on November 1, 1964. The appellants protested this final billing and Mr. Goodman suggested that the appellee try to get his subcontractors to reduce their bills. Mr. Winskowski refused to do this and no further payments were made by the Goodmans.

The builder, on July 23, 1965, filed a mechanics' lien on the appellants' property for the amount claimed and subsequently filed a bill in equity in the Circuit Court for Baltimore County to enforce the lien, praying that the court adjudge the Goodmans' property subject to the lien and appoint a trustee to sell the property and apply the proceeds therefrom to the satisfaction of the debt owed the builder.

The appellant moved to dismiss on the ground that the lien had been filed after the six months allowed by statute. The chancellor found that the filing of the lien was timely and after a trial he allowed a mechanics' lien in the amount of $22,280.77 with six percent interest from July 23, 1965, and in a decree issued December 28, 1966, ordered that if the lien was not paid within thirty days the court would entertain a petition to appoint a trustee to sell the property to satisfy the lien against Lawrence H. Goodman and Barbara L. Goodman, his wife, and further entered a money judgment in the amount of $6,225.98 in favor of Marvel L. Winskowski against Lawrence H. Goodman, individually, and that the defendants pay the costs of the proceedings. This appeal was taken from that decree.

The appellants urge that the lien was not filed within the six months statutory period provided for in Code (1957), Article

63, Section 23. This statute provides that a lien exists for a six months period after the work has been completed but that to extend it over a longer period a claim must be filed on or before the expiration of the six months period. This lien was filed on July 23, 1965. The appellants contend that the last work was done on January 15, 1965, and that therefore the claim was filed too late. There was, however, testimony believed by the chancellor, that certain work involving the laying of drains was done on January 29, 1965. While it is true that the courts will not extend the statutory period and uphold a lien where the work done is of an inconsequential nature and done only for the purpose of circumventing the limitations of the statute, *Mt. Airy v. Grey Dawn,* 237 Md. 38, 205 A. 2d 299, it is equally true that if, after a contract is substantially completed, a builder furnishes additional work or materials necessary to the performance of the contract and this is done in good faith at the request of the owner and not merely as a friendly gesture or a gratuity or to circumvent the statute, then the period for filing the lien runs from the date the work is done, regardless of the value of the work. *District Hgts. Apts. v. Noland Co.,* 202 Md. 43, 95 A. 2d 90. It is not contradicted that the drains were installed pursuant to the contract. Neither is there an indication that the work was done for the purpose of extending the period for filing a lien since the work was done before the final billing was protested and indeed before a final statement was submitted and at this time there had been no dispute between the parties. We find that the chancellor was correct in allowing the lien since it was filed within the statutory period.

The main thrust of the appellants' argument is that the lower court erred in allowing the introduction of parol evidence to alter and vary the terms of a written contract. In support of this contention they cite several cases, among them *Markoff v. Kreiner,* 180 Md. 150, 154, 23 A. 2d 19, where the Court said:

> "One of the most familiar rules of the common law is that parol evidence is inadmissible to vary or contradict the terms of a written instrument. *Warren Glass*

*Works Co. v. Keystone Coal Co.,* 65 Md. 547, 5 A. 253; *Castleman v. Du Val,* 89 Md. 657, 43 A. 821; *Fowler v. Pendleton,* 121 Md. 297, 88 A. 124."

Admittedly this is the law, however, it does not apply in the instant case. In this case the evidence was admitted not to vary or contradict the terms of the written contract, but rather to show that the written contract was not the one relied on by the parties. This rule was stated in *Furness-Withy & Co. v. Fahey,* 127 Md. 333, 336-37, 96 Atl. 619, as follows:

> "The admissibility of parol evidence to show that there was never a real meeting of the minds has been established by a long line of decisions in this State, the leading one among which is the *Southern St. Ry. Adv. Co. v. Metropole Co.,* 91 Md. 61, in which following the earlier cases of *Davis v. Hamblin,* 51 Md. 525, and *Harrison v. Morton,* 83 Md. 456, the rule is announced in these terms: 'The rule which excludes parol or verbal evidence to affect that which is written, was not at all infringed by the admission of such evidence to show that the instrument was void or that it never had any legal existence or binding force for want of due delivery and acceptance.' "

In finding that this was true in the instant case the chancellor was faced with two contradictory versions and he chose not to believe that recited by Mr. Goodman. In doing this he had the following items of evidence on which to rely:

1. Mr. Dale Hess remembered a discussion of a "cost plus" job but Mr. Goodman said there was no such discussion.

2. Mr. Herring, a vice president of Maryland National Bank, said that Mr. Goodman furnished the $71,000 figure as the probable cost of the house but Mr. Goodman denied this saying that Mr. Herring advised him to use an inflated figure of the cost.

3. The monthly billings were for costs of labor and materials plus 10%, which agrees with the builder's version of the contract.

4. As of December 1964, the owners had been billed $60,-738.06 of which they paid $55,652.04 and at that time they did not object on the ground that the true contract ceiling was for $50,000.

5. Although there were changes and extras, there were no bills submitted for these but they were simply billed at cost, plus 10%.

6. Mr. Cairnes, a disinterested party, testified that the written contract was not the one actually agreed on by the parties.

On the basis of this conflicting evidence and after having observed the demeanor of the witnesses, the chancellor had adequate grounds for believing the version that he finally accepted.

The appellants list in their brief fourteen incidents that took place during the trial, claiming that they constituted reversible error. Without going into each of these in detail, suffice it to say that we have examined each of these matters and that none of them is such as would constitute reversible error.

The appellants' final contention is that the chancellor's application of payments and the resulting apportionment of the mechanics' lien claim was incorrect. Essentially the lower court found that Mr. Goodman was liable for the entire debt, while Mrs. Goodman was liable only to the extent of $50,000 plus authorized changes and extras, since she had signed the contract but had no part in any of the negotiations that took place with the builder. The result of this was that Judge Proctor allocated the claim so that there was a joint liability of $22,-280.77 which was covered by the lien and in addition there was personal liability on Mr. Goodman's part in the amount of $6,225.98.

The appellants argue that since the December billing of $8,-467.24 was paid by Mr. Goodman's personal check and that part of this amount was applied to the joint debt of the appellants that the remaining $5,652.04 of Mr. Goodman's personal check should also be applied to the joint debt. The effect of this would be to decrease the joint liability by the above amount while increasing Mr. Goodman's personal liability by a like amount.

This was not done because, as found by the trial judge, Mrs. Goodman was liable only for $50,000 and when this check was paid the builder applied it to the earliest unpaid debt, the November billing. This check brought the total amount paid to $55,652.04 for which the wife was liable for only $50,000, thus while the excess of the check was credited to Mr. Goodman personally, the rest of it went to satisfy the joint liability of husband and wife up to $50,000. The remainder of the check could be applied to the joint liability of the Goodmans only if they showed that this was for changes and extras and this they could not do as the builder's statements did not show separately the cost of changes and extras. There having been a failure to show that the sum was paid for changes and extras, the chancellor was correct in crediting this amount to the personal liability of Mr. Goodman.

For the reasons stated we conclude that the trial below was properly conducted, was free of reversible error and that the judgments entered were in accord with both the law and the facts.

*Judgments affirmed, with costs.*