## DAVIDSON *v.* KATZ

[No. 277, September Term, 1968.]

*Decided June 3, 1969.*

The cause was argued before HAMMOND, C. J., and MARBURY, BARNES, MCWILLIAMS, SINGLEY and SMITH, JJ.

*Karl G. Feissner,* with whom were *William L. Kaplan* and *Thomas P. Smith* on the brief, for appellant.

*Norman H. Heller* for appellee.

SMITH, J., delivered the opinion of the Court.

In this case plaintiff-appellant (Davidson) thought he had acquired "something for nothing" and is upset because the trial court did not believe his witnesses.

More precisely, he contends he paid $1.00 for $200.00 plus 50% of an option contract calculated to produce a profit of 25 cents a foot for 270,000 square feet of ground ($67,500.00) along with an option worth an additional $43,683.00.

Defendant-appellee (Katz) in August of 1966 became an employee of a photocopy business owned by Davidson. He had previously been an employee of S.C.M. Corporation, the severance of which connection produced litigation in the United States District Court for the District of Columbia against Davidson, Katz and Davidson's corporation.

In September of 1966 it is claimed that Katz told Davidson that he was owed a favor by Samuel DiMaggio and Norman M. Tayler who owned certain ground in Montgomery County, Maryland, and could obtain this ground under favorable conditions and terms at a price of $1.50 per square foot. In October of 1966 Davidson and Katz agreed to acquire this property jointly. They went to the office of the District of Columbia attorney who was representing them in the above mentioned litigation. He prepared a contract between the owners of the real estate and Davidson and Katz. It was agreed that Katz would handle the negotiations because he knew all of the parties.

The land consisted of 6.2 acres or approximately 280,-000 square feet. The purchase price was to be $130,680.00 or $1.50 per square foot. The contract called for a deposit of $100.00.

Davidson testified that at one point Katz told him the contract had been signed by all parties except DiMaggio, and that DiMaggio was in Texas and would sign upon his return. Davidson claims to have seen the contract with all signatures on it except that of DiMaggio. Davidson further testified that subsequently Katz told him that DiMaggio had signed.

Peter Paul, an employee of Davidson, testified that in November, 1966, he heard Katz say the contract had been signed by all owners except Mr. DiMaggio and that during the first part of December, 1966, Katz said he had obtained the DiMaggio signature. He further testified that on the latter occasion Katz handed the contract with all signatures on it to Davidson who returned it to Katz, although he couldn't recall whether the contract "was one page or two or ten."

In December, 1966, Davidson and Katz were not as friendly as they had been when Katz left the employ of S.C.M. Corporation. Employment of Katz by Davidson terminated November 23, 1966. They had reached the point where relations were strained. Katz said, "We left on very disagreeable terms and I didn't see any sense in having any conversation with him whatsoever." The attorney who was representing them in the litigation in the United States Court and who had prepared the contract arranged a meeting in his office for December 19. The Katz version of that meeting is:

"We sat down. We talked about the problems they were having with the photocopy business and I told him any problem they had I could help I would help them out within the next couple of days. And Mr. Davidson brought up, what about the contract. * * * They told me that this contract was made out to both of us and I, in order to separate any relationship between myself and Mr. Davidson, I would have to assign my interest in that contract to Mr. Davidson. They had to give me the sum of one dollar. That was the first part."

An assignment was prepared and executed by Katz. It was in the following form:

> "In consideration of the receipt of One Dollar ($1.00), the receipt of which is hereby acknowledged, and for other good and valuable consideration, I, the undersigned, to (sic) hereby sell, assign, transfer and convey all my right, title and interest in and to a certain contract for the purchase and option to purchase unimproved real estate located at Randolph Road, Montgomery County, Maryland, presently owned by Norman Tayler, et al., to Herbert L. Davidson. This Assignment includes an assignment of the $200 deposit heretofore tendered by the undersigned with the contract to the present sellers."

The deposit specified in the purchase contract was $100.-00, not $200.00 as stated in the assignment.

One month and one day after the execution of this assignment Davidson filed suit against Katz in the Circuit Court for Montgomery County. The declaration was captioned "Breach of Fiduciary Relationship, Fraud". It recited the joint venture to purchase the Tayler-DiMaggio property, that Katz had advised Davidson that the contract of sale was signed by all parties and exhibited the contract which had the signature of all parties except DiMaggio, that Katz subsequently advised Davidson that DiMaggio had signed, that acting upon those representations Davidson made numerous business contacts to secure an offer to purchase the property, that Davidson made demand upon Katz for production of a copy of the signed contract which he refused to do, and that Mr. and Mrs. DiMaggio and Mr. and Mrs. Tayler said they never signed the contract. Davidson demanded compensatory damages of $160,000.00 and punitive damages of $100,-000.00. He also requested Katz be required to turn over to Davidson the DiMaggio contract "if, in fact, it even exists".

A realtor and real estate broker gave an opinion that the land which the parties were proposing to buy for $1.50 per square foot had a fair market value of $2.00 per square foot.

Messrs. Tayler and DiMaggio were called as witnesses by Davidson. Tayler testified that Katz did approach him relative to purchase of the property. He denied that there was ever a tender of a deposit. He did recall that Katz handed him a contract *with no signatures thereon* in November, 1966, a contract that called for purchase at $1.50 per square foot. This document was admitted into evidence. It is an original. It is unsigned by anyone. Tayler said he returned the contract to Katz in the latter part of November or December. Davidson said it was returned to him after suit was filed.

DiMaggio testified that he was never tendered a deposit and never signed any contract for sale of the property.

Davidson claimed that after Katz assigned the contract to him he proceeded to attempt to sell the contract. He claims that he ultimately contacted Mr. Samuel J. Gorlitz. No contract was entered into because by calling Mr. DiMaggio, Davidson ascertained that DiMaggio had signed no contract. This all took not more than three to four weeks, so Davidson said, from the time of the contract assignment.

Gorlitz was called as a witness by Davidson. He corroborated receipt of a telephone call from Davidson with an indication that they were talking about a price of $1.75 per square foot. He said this took place "somewhere in November or December". No agreement was ever entered into. The telephone conversation took "perhaps five minutes". Gorlitz said he next had contact with Davidson "a month or two afterwards". Davidson then claimed that a problem had developed when Gorlitz made inquiry relative to this land.

The matter was tried before the court without a jury. At the conclusion of the trial the trial judge filed a writ-

ten memorandum in which he reviewed the case and the testimony. At the conclusion thereof he said:

> "After weighing the evidence including the demeanor of the witnesses, it is the Court's view that the plaintiff has not proven by a fair preponderance of the evidence the elements that govern actionable deceit and fraud. Therefore, the Court finds for the defendant."

Davidson then requested the trial judge "to set forth by memorandum the names of the witnesses whose demeanor materially affected the decision of the Court, and what in the demeanor of said witnesses was felt to be inappropriate". Davidson said this was filed under Maryland Rule 18 c. The trial judge denied the request as unanswerable, finding it "presumptuous and impertinent".

Davidson on appeal to this Court claims as error by the trial court (1) "permitting the introduction of oral evidence to contradict a valid assignment supported by lawful consideration", (2) "the extended period of time between the trial of this matter and the court's decision rendered nugatory the court's weighing of the evidence on the basis of the demeanor of the witness", and (3) "the evidence when considered in its entirety leads to only one conclusion: that the appellant should have prevailed at the trial of this matter".

I

The testimony which Davidson contends was admitted over objection in violation of the parol evidence rule is that of Katz, previously quoted, and Katz's further testimony where he was asked:

> "What did you ask Mr. Davidson about and what did he say about it?"

to which he replied:

> "I told him no deposit was tendered and the contract was only for one hundred dollars, to the best of my recollection.

"Mr. Davidson came back and said, well, if we give him $200, that will be for the three days I. paid you for last week that you didn't really work."

In *Freeman v. Stanbern Const. Co.,* 205 Md. 71, 106 A. 2d 50 (1954), the Court stated:

"It is an elementary rule of the common law that parol evidence is inadmissible to vary or contradict the terms of a written instrument. The reason for that rule, as we said in *Markoff v. Kreiner,* 180 Md. 150, 23 A. 2d 19, is that when contracting parties have discussed and agreed upon their obligations to each other and reduced them to writing, their written contract is more reliable as evidence than memory." *Id.* at 77.

See, also, *Goodman v. Winskowski,* 249 Md. 546, 550, 241 A. 2d 407 (1968) for *dictum* to the same effect.

In *Schuman v. Gordon Investment Corp.,* 247 Md. 265, 232 A. 2d 256 (1967), Judge Horney said for this Court:

"In *Chesapeake Brewing Co. v. Goldberg,* 107 Md. 485, 69 Atl. 37 (1908), involving the interpretation of an ambiguous lease, it was said (at p. 488):

'It is of course familiar law that extrinsic evidence is not legally admissible to alter, contradict or vary the terms of a written contract, yet it is equally well settled that where a question arises as to the general intention of the parties, concerning which the instrument is not decisive, proof of independent facts collateral to the instrument, may be admitted.'

"Likewise, in *Sommers v. Dukes,* 208 Md. 386, 118 A. 2d 660 (1955), the Court, though recognizing the general rule that parol evidence is inadmissible to vary or contradict the terms of

a written agreement, went on to say (at p. 394) that 'if any doubt arises from the language of a contract as to the intention of the parties, extraneous evidence may be admitted to aid the court in comprehending its meaning.' " (citing numerous authorities) *Id.* at 271-72.

Relative to Davidson's objection to the admission of parol evidence with reference to "consideration", the opinion of Chief Judge Brune for this Court in *Rinaudo v. Bloom*, 209 Md. 1, 120 A. 2d 184 (1956) is pertinent:

"Parol evidence is admissible to explain the meaning of the words used. *Fryer v. Patrick*, 42 Md. 51; *Lambdin v. Dantzebecker*, 169 Md. 240, 181 A. 353. Where the consideration for a conveyance is expressed as so many dollars 'and other good and valuable consideration,' the true consideration may be shown. *Drury v. State Capital Bank*, 163 Md. 84, 161 A. 176." *Id.* at 11.

The evidence to which objection is made was admitted not to vary the terms of the assignment, but to determine just what rights there were to be assigned and, accordingly, what rights passed to Davidson under the agreement. Apparently, there was discussion relative to the $200.00. Careful reading of the assignment indicates that the assignment was not of $200.00 paid but of the "$200.-00 deposit heretofore *tendered*". The obvious explanation is that which Mr. Katz offered:

"They told me that this contract was made out to both of us and I, in order to separate any relationship between myself and Mr. Davidson, I would have to assign my interest in that contract to Mr. Davidson. They had to give me the sum of one dollar."

The contract was in the hands of the sellers. Therefore, the "easy" way to handle that situation was simply for a

document to be prepared by which Katz assigned any and all rights that he might have in that contract. There was no error.

## II

Davidson next contends that the "extended period of time between the trial of this matter and the court's decision [which Davidson states to be seven months] rendered nugatory the court's weighing of the evidence on the basis of the demeanor of the witnesses".

At the trial on October 24, 1967, Davidson sought to introduce the deposition of the District of Columbia attorney who prepared the assignment. Katz successfully objected. Davidson pressed the matter and the trial judge directed that memoranda of law be submitted. On February 13, 1968, the court ordered further argument. Davidson was successful in convincing the court as to the propriety of admitting the testimony of the attorney. He appeared and testified on March 26. The court rendered its decision on June 18. It will thus be seen that a part of the delay concerning which Davidson complains results from favorable consideration of his contention relative to admissibility of testimony.

Maryland Rule 18 b provides:

"A judge shall render his decision in an action argued before him, or submitted for his judgment, within two months after the same shall have been so argued or submitted."

The content of the rule is identical to the content of Art. IV, § 23 of the Maryland Constitution.

In *Myers v. State,* 218 Md. 49, 145 A. 2d 228 (1958) it was stated:

"Myers' final contention is that the trial judge did not abide by Art. IV, Sec. 23 of the Maryland Constitution, because he did not render his decision on the petition 'within two months' after it was submitted. It has been held that Sec. 23 is *not mandatory, but directory,* and thus

there was no loss of jurisdiction to pass upon the petition. *Suttleman v. Board of Liquor License Commissioners,* 209 Md. 134, 140; *Snyder v. Cearfoss,* 186 Md. 360." (emphasis added) *Id.* at 51.

Davidson's contentions may be summarily dismissed based on the holding in *Provenza v. Provenza,* 226 Md. 63, 172 A. 2d 503 (1961) wherein Judge (later Chief Judge) Henderson said for this Court:

> "The appellant argues that the 'clear error' rule, Maryland Rule 886 a, is inapplicable because the chancellor held the case *sub curia* for nearly a year after the trial. But that fact alone would not support the appellant's inference that the chancellor had forgotten the essential facts developed at the trial and his impression of the witnesses." *Id.* at 66.

Davidson also takes exception to the refusal of the trial judge to name the witnesses whose demeanor materially affected the court's decision and "what in the demeanor was felt to be inappropriate." We find no such requirement in Maryland Rule 18 c.

### III

Davidson contends that the evidence, when considered in its entirety, leads but to one conclusion, namely that the trial court's verdict is clearly erroneous.

Maryland Rule 886 a provides:

> "When an action has been tried by the lower court without a jury, this Court will review the case upon both the law and the evidence, but the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard will be given to the opportunity of the lower court to judge the credibility of the witnesses."

In *Racine v. Wheeler,* 245 Md. 139, 225 A. 2d 444 (1967), Judge McWilliams said for this Court:

> "Since the jury is free to believe only a portion of the evidence of each side the synthesis apparently accomplished by the jury is simply a manifestation of its obvious function. *Maryland Chemical Company v. Monn,* 241 Md. 127, 215 A. 2d 731 (1966)." *Id.* at 144.

This synthesis is no less true of the court when it is the trier of the facts.

In this case Davidson testified that Katz first told him that he had obtained the signature of all but one of the parties and then, later, that he had obtained the signature of all of the parties. Davidson's employee, Paul, testified that he heard Katz make these statements and saw Katz hand a signed contract to Davidson which Davidson returned to Katz, although Paul did not recall whether the document contained one page or ten. Katz denied these statements and said Davidson did not want other employees knowing about this transaction. The parties who were alleged to have signed the contract said they never signed it. What purports to be the contract was filed in court. It is an original. It is unsigned. The trial judge was under no obligation to believe Davidson and his witness. He obviously did not believe them and found accordingly.

*Judgment affirmed; appellant to pay the costs.*