CHARLES J. MILLER, INC. *v.* McCLUNG-LOGAN
EQUIPMENT COMPANY, ETC.

[No. 184, September Term, 1978.]

*Decided November 3, 1978.*

The cause was argued before THOMPSON, MASON and LISS,
JJ.

*Kenneth D. Short* and *Charles O. Fisher* for appellant.

*M. Stanley Radcliffe* for appellees.

LISS, J., delivered the opinion of the Court.

This is an appeal by Charles J. Miller, Inc., appellant, from
a judgment rendered in the Circuit Court for Carroll County
(Weant, J., presiding) in favor of McClung-Logan Equipment
Co. and its collision insurance carrier, appellees.

The case arises out of a bailment which occurred when the
appellee, McClung-Logan delivered to the appellant a 10 ton

Rexnord steel wheel roller to try out for the purpose of determining whether it was interested in purchasing the equipment. While the roller was in the custody of the appellant an accident occurred, and when the roller was re-delivered to the appellee, it was determined to be a total loss. The original suit named a subsidiary company of the appellant and one of the employees of the subsidiary company as co-defendants. At trial, the presiding judge granted motions to dismiss as to these co-defendants, and no appeal was taken from this action.

The sole issue raised by this appeal is whether the appellee/bailor met its burden of proof and established by a preponderance of the evidence that the appellant/bailee failed to exercise the requisite duty of reasonable care in the use of the equipment which is the subject matter of the bailment.

The case was tried without the intervention of a jury. The parties stipulated: 1) that the appellee delivered the roller to the appellant in good condition; 2) that when it was returned it was damaged and the extent of that damage was determined to be a total loss; and 3) that the fair value of the equipment when delivered to the bailee was $17,538.40. Counsel for both sides agreed that this stipulation established a prima facie case that there was a mutual bailment for hire and that the stipulated facts required the bailee to go forward with proof that it had exercised reasonable care in the control of the bailed property.

Appellant offered the testimony of its employee who was in charge of the equipment when the accident occurred: The employee stated that acting under instructions from his employer, he loaded the roller onto a tractor trailer owned by the appellant. He gave a detailed account as to the manner in which the roller was secured by four steel chains, each having a test strength of 100,000 lbs.[1] He testified that while he was transporting the steel wheel roller from Thurmont to Westminster, traveling in an easterly direction on Maryland Route 97, he approached a curve to his left which led to a

---

[1]. It was not contended by the appellee that the method of securing the roller was improper, nor was there evidence offered at trial as to any alleged failure to use due care in securing the equipment.

bridge over the Monocacy River. At that point, noticing a small, white automobile heading toward him on his side of the road, he swerved his vehicle to the right, struck the guard rail, and then swung the tractor trailer back to the left. Upon striking the guard rail, he heard a sharp crack which he believed to be the sound of the snapping of one of the chains holding the roller in position on the driver's side of the trailer. The roller shifted position, but the two back chains continued to tether the equipment. Because of the change in position, a portion of the roller extended beyond the rear of the truck bed and struck the bridge abutment, causing the remaining restraints to be severed which in turn caused the roller to fall off the truck and to tumble down the embankment.

At the conclusion of the appellant's case, the appellee called in rebuttal the police officer who investigated the accident. He stated that he arrived on the scene less than an hour after the occurrence and that his investigation revealed that the accident occurred in daylight, with the weather being sunny, dry, and clear. He found damage to the guard rail caused by the impact of the roller but observed that there was no apparent damage to the tractor-trailer. He further stated that he remained at the scene for approximately one half hour and that at no time during that period did the driver make any reference to an alleged phantom vehicle which had caused the accident. Appellee rested its case at the conclusion of this rebuttal testimony.

The case was held sub curia, and the judge subsequently filed a memorandum order in which he found "from the evidence [that] the damage complained of was not the result of any collision or near collision with any other vehicle as claimed by the bailee." That conclusion by the trial judge was based primarily on his finding that the driver of the tractor trailer never mentioned to the investigating officer at the scene of the accident the existence of the alleged white vehicle (which he claimed forced him to swerve to avoid a collision). The trial judge found it inconceivable that the driver of the tractor trailer would not have mentioned the phantom vehicle to the investigating officer if such a vehicle did in fact exist. He concluded that the appellant had failed to offer credible

testimony which would excuse the failure of the appellant to return the steel wheel roller in the same condition as received. We agree and shall affirm.

The law of bailments is ancient — extending back to Biblical times and before.[2] The Biblical law of bailments, as so many other facets of the law, filtered through the ecclesiastical courts into the common law and was adopted here in Maryland. It is amazing how little change has occurred in the law of bailments over the intervening centuries since the time of Moses. In a long series of cases factually similar to the case at bar, Maryland has stated the controlling principles of bailment law: when the subject matter of a mutual bailment for hire is delivered by the bailor to the bailee, it must be returned by the bailee in substantially the same condition ordinary wear and tear excepted. When the bailed chattel is either not returned or returned in a damaged condition without legal excuse, a prima facie case of lack of due care or negligence is made out. It is then the duty of the bailee to go forward with proof that the loss or injury was occasioned by a cause which excuses the bailee, thereby providing a complete defense as the bailee is not an insurer. The bailor is then, by reason of his burden of proof, required to overcome this defense by establishing by a preponderance of the evidence that the bailee failed to use ordinary care and diligence to safeguard the bailor's property, and that failure to perform his duty caused the loss to the bailor. *Stehle Equipment Co. v. Alpha Construction and Development Co.,* 247 Md. 210, 230 A. 2d 654 (1967); *Fox Chevrolet v. Middleton,* 203 Md. 158, 99 A. 2d 731 (1953); *Schleisner Co. v. Birchett,* 202 Md. 360, 96 A. 2d 494 (1953); *Goldberg v. Kunz,* 185 Md. 492, 45 A. 2d 279 (1946); *General*

---

2. The Code of Maimonides, Book Two, The Book of Civil Laws, speaks of the laws concerning bailment. It refers to Exodus 22:6-7, which says that a bailee from whose possession the object bailed was stolen or lost was required to swear that he kept the object after the manner of bailees. Exodus 22:9-10 and Exodus 22:11 provide: "[If] a man deliver unto his neighbor an ass, ox, or a sheep or any beast, to keep, and it die or be hurt, or driven away, no man seeing it; the oath of the Lord shall be between them both to see whether he have not put his hand unto his neighbor's goods; and the owner thereof shall accept it, and he shall not make restitution." The implication was that if the bailee was not responsible for the loss by reason of his conduct, then he was not liable to the bailor.

*Refining Co. v. International Harvester Co.,* 173 Md. 404, 196 A. 131 (1938).

Appellant relies principally on the case of *Trans-System Service, Inc. v. Keener,* 249 Md. 369, 239 A. 2d 897 (1968) to support its position. At first blush, that case might be considered dispositive of the case at bar, but a careful analysis of *Trans-System* establishes that it is distinguishable on the facts: There, a tractor trailer was left by the bailor with the bailee for certain repairs to be made, it being conceded by the parties that there was a mutual bailment for hire and that the tractor trailer was in good condition when received. While the tractor trailer was in the bailee's possession, it caught fire and was severely damaged. These facts were submitted by the bailor, who then rested his case. The trial judge held that these facts made out a prima facie case of negligence. The bailee then offered evidence which established that it had taken elaborate precautions to protect the property entrusted to it and that the fire was of unexplained origin. At this point, the bailee rested, and the bailor offered no rebuttal testimony as to the origin of the fire or as to any alleged negligent act of the bailee or its employees. No proof was offered by the bailor that there was any pre-existing condition conducive to the occurrence of the fire.

The Court of Appeals held that the testimony offered by the bailee was sufficient to excuse its re-delivery of the chattel to the bailor in damaged condition and adequate to overcome the prima facie case of the bailor. As the bailor there failed to offer any affirmative evidence of negligence, the bailee was entitled to a directed verdict.

In the instant case, the bailee offered as an excuse for its failure to return the roller in as good condition as received the explanation that the damage was occasioned by the actions of an alleged phantom vehicle. The bailor rebutted this contention by offering proof that appellant's driver had failed to mention the alleged phantom vehicle to the investigating officer at the scene of the accident. On the basis of that testimony, the trial judge chose to believe that there was no phantom vehicle. As this was the only excuse offered by the

defendant, it left unexplained the unusual movement of the vehicle which resulted in the breaking of one of the chains and the ensuing collision with the bridge abutment. Bailor's prima facie case of negligence survived the effort of the defendant to overcome it, and the court sitting as a jury had facts before it from which it could find that the defendant was negligent.

The Court of Appeals noted in *Clemson v. Butler Aviation,* 266 Md. 666, 296 A. 2d 419 (1972), at page 671, that "[W]hen a matter is tried before the court without a jury the evidence must be viewed in the light most favorable to the party prevailing below . . . although the conclusions of law based upon the facts are reviewable by this Court." (Citations omitted).

We are governed by Maryland Rule 1086 which requires that "the judgment of the lower court will not be set aside on the evidence unless clearly erroneous and due regard [will] be given to the opportunity of the lower court to judge the credibility of the witnesses." The trial judge is entitled to believe or disbelieve all, a portion, or none of the evidence offered and in a non-jury case to reach a determination as the trier of the facts. *Davidson v. Katz,* 254 Md. 69, 79-80, 255 A. 2d 49 (1969). When the court below chose to disbelieve the phantom vehicle testimony of the bailee, the prima facie case was not "resurrected"; rather, the prima facie case became the only credible evidence before the court. Under those circumstances, the trial judge was justified in reaching the verdict he found.

*Judgment affirmed.*
*Costs to be paid by appellant.*